| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| **Giovanni Orantes 190060**<br>**Luis A. Solorzano 310278**<br>**3435 Wilshire Blvd., Suite 2920**<br>**Los Angeles, CA 90010**<br>**(888) 619-8222 Fax:  (877) 789-5776**<br>**190060 CA**<br>**go@gobklaw.com** | |
| ☑ Attorney for Movants<br>☐ *Movant appearing without attorney:* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| In re:<br><br>    **Benjamin Isaac Menjivar**<br>    **Sara Aura Menjivar** | CASE NO.: **2:17-bk-23881-WB**<br>CHAPTER: 11 |
|---|---|
| | **NOTICE OF MOTION AND**<br>**MOTION FOR ORDER DETERMINING**<br>**VALUE OF COLLATERAL**<br>**[11 U.S.C. § 506(a), FRBP 3012)** |
| | This motion is being made under **ONLY ONE** of the following notice procedures:<br>☐ No hearing unless request under LBR 9013-1(o)(4);<br>☑ Hearing set by Movant: LBR 9013-1(d);<br>☐ Hearing set on Shortened Notice: LBR 9075-1(b); or<br>☐ Hearing on Emergency Basis: LBR 9075-1(a).<br><br>Date: November 8, 2018<br>TIME: 10:00 a.m.<br>COURTROOM: 1375<br>PLACE: 255 E. Temple Street,<br>            Los Angeles, CA 90012 |
|                                         Debtor(s) | |

**Creditor Name** (*Insert name of creditor holding collateral to be valued*):Wells Fargo Bank, N.A..

1.      **PLEASE TAKE NOTICE THAT** Benjamin Isaac Menjivar and Sara Aura Menjivar  (Movants) request an order valuing the collateral described below. This motion does not request lien avoidance (see LBR forms F 4003 for lien avoidance involving principal residences and judicial liens).

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2013*                         Page 1                   **F 3012-1.MOTION.VALUATION**

2. **NOTICE PROVISIONS AND DEADLINES FOR FILING AND SERVING A WRITTEN RESPONSE:** Your rights might be affected by this Motion. You may want to consult an attorney. Refer to the box checked below for the deadline to file and serve a written response. If you fail to timely file and serve a written response, the court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief. You must serve a copy of your opposition upon the Movant and the Movant's attorney and the United States trustee, and also serve a copy on the judge pursuant to LBR 5005-2(d) and the Court Manual.

a. ☐ **No Hearing Scheduled; Notice Provided Under LBR 9013-1(o):** This Motion is filed by the Movant pursuant to LBR 9013-1(o), which provides for granting of motions without a hearing. The full Motion is attached, including the legal and factual grounds upon which the Motion is made. If you wish to oppose this Motion, you must file a written response and request for hearing with the court and serve it as stated above **no later than 14 days after the date stated on the Proof of Service of this Motion** plus 3 additional days if you were served by mail, electronically, or pursuant to F.R.Civ.P. 5(b)(2)(D), (E), or (F).Your opposition must comply with LBR 9013-1(f) and (o).

b. ☑ **Hearing Set by Movant; Notice Provided Under LBR 9013-1(d):** This Motion is set for hearing on at least 21 days of notice pursuant to LBR 9013-1(d). The full Motion and supporting documentation are attached, including the legal and factual grounds upon which the Motion is made. If you wish to oppose this Motion, you must file a written response with the court and serve it as stated above **no later than 14 days prior to the hearing.** Your response must comply with LBR 9013-1(f). The undersigned hereby verifies that the hearing date and time selected were available for this type of Motion according to the judge's self-calendaring procedures [LBR 9013-1(b)].

c. ☐ **Hearing Requested on Shortened Notice under LBR 9075-1(b):** Movant has filed a separate motion asking the court to set a hearing on shortened notice, titled Application for Order Setting Hearing on Shortened Notice (Application). If the court grants the Application, the Movant will serve you with another document providing notice. The deadline to file and serve a written response will be contained in this document. If the court denies the Application, the Movant will provide written notice of a regular hearing date or other proposed disposition of this motion.

d. ☐ **Hearing Requested on Emergency Basis under LBR 9075-1(a):** Hearing Requested on Emergency Basis under LBR 9075-1(a): Movant has contacted the court and requested an emergency hearing on less than 48 hours notice. If the court grants the request, you will receive a separate Notice of Hearing that identifies the deadline for the Movant to file and serve the Motion and the deadline for you to file and serve a written response. If the court denies the request to set an emergency hearing, the Movant will provide written notice of a regular hearing date or other disposition of this motion and the deadline for filing an opposition.

Date:   10/3/2018

By:   /s/ Luis A. Solorzano

_Signature of Movant or Attorney for Movant_

Name:   Luis A. Solorzano

_Print Name of Movant or Attorney for Movant_

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

_June 2013_                              Page 2                              **F 3012-1.MOTION.VALUATION**

## MOTION FOR ORDER DETERMINING VALUE OF COLLATERAL
## PURSUANT TO 11 U.S.C. § 506(a) AND FRBP 3012

**1. The Movant is (check one):**

- [x] The debtor
- [ ] A creditor
- [ ] The Official Committee of Creditors Holding Unsecured Claims
- [ ] Others (specify): _____

**2. The Collateral to be Valued:**

a. The Movant requests a determination of the value of the following collateral (Collateral).

- [x] Real Property
  - *Street Address:*     1129 S. 2nd Street
  - *Unit Number:*
  - *City, State, Zip Code:*   Alhambra, CA 91801

  Legal description or document recording number (including county of recording):
  Lot 232, AS SHOWN ON THAT CERTAIN MAP ENTITLED TRACT NO 10522, WHICH MAP WAS

  FILED IN THE OFFICE OF THE RECORDER OF THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA IN BOOK 161 OF MAPS PAGE(S) 47 TO 49.
  APN: 5348-011-021

- [ ] Personal Property
  - [ ] Vehicle
    - *Year, manufacturer, type, and model:*
    - *Vehicle Identification Number:*
    - *Location of vehicle (if known):*
  - [ ] Vehicle
    - *Year, manufacturer, type, and model:*
    - *Vehicle Identification Number:*
    - *Location of vehicle (if known):*

  - [ ] Other Personal Property (describe type, identifying information, and location):

  _____

- [ ] See attached page.

b. Purpose of the Valuation

- [x] Treatment of the claim in a plan:
  - [ ] Pursuant to 11 U.S.C. § 1322
  - [x] Pursuant to 11 U.S.C. § 1129
  - [ ] Other

- [ ] Disposition or use of Collateral pursuant to 11 U.S.C. § 363;

- [ ] Other: (specify): _____

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2013                                   Page 3                          F 3012-1.MOTION.VALUATION

c. Movant asserts that the value of the Collateral is $749,000.00  as of (date):06/23/2018

Check One:

☐    Date bankruptcy case was commenced.

☑    Other (specify):    This date was used because it was the anticipated confirmation date.

## 3. Liens Encumbering the Collateral:

The Collateral is subject to the following liens in the amounts specified securing the debt against the Collateral:

| Names of Lien Holders in Order of Priority | Original Lien Amount | Alleged Balance of Lien Amount As of (applicable date) 11/09/2017 |
|---|---|---|
| 1st Lien: Wells Fargo Bank, N.A. | $551,650.00 | $743,982.40 |
| 2nd Lien: | $ | $ |
| 3rd Lien: | $ | $ |

☐ See attached page for additional lien(s).

## 4. Determination of Secured/Unsecured Status:

Based upon paragraphs 2 and 3 above, Movant asserts the following:

| Names of Lien Holders in Order of Priority | Secured Portion of the Claim | Unsecured Portion of the Claim |
|---|---|---|
| 1st Lien: Wells Fargo Bank, N.A. | $743,982.40 | $0.00 |
| 2nd Lien: | $ | $ |
| 3rd Lien: | $ | $ |

☐ See attached page for additional lien(s).

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2013                                              Page 4                                F 3012-1.MOTION.VALUATION

**5. Evidence in Support of Motion:**

    a.    Evidence establishing the value of the Collateral:
- ☑ Declaration of the debtor as owner of the Collateral
- ☑ Declaration of the expert witness
  - ☑ Certified appraiser
  - ☐ Other: _____
- ☐ Declaration of a party who can authenticate a market report e.g. Kelley Blue Book) pursuant to F.R.Evid. 803(17).
- ☐ Other:

    b.    Evidence establishing the amount of the claims related to the liens encumbering the Collateral
- ☑ Declaration of the debtor as owner of the Collateral
- ☑ Declaration of a witness authenticating a document that is an admissible statement of a party opponent (e.g. proof of claim or a recent loan statement) pursuant to F.R.Evid. 801(d)(2).
- ☐ Other:

    c.    Evidence establishing the priority of the lien encumbering the Collateral
- ☑ Declaration of the debtor as owner of the Collateral
- ☐ Other:

    d.    ☐ Other evidence (specify):

**Based upon the foregoing, Movant requests that this Court value the Collateral as listed in paragraph 2.c. above and that the claims related to the liens encumbering the Collateral, listed in paragraph 3 above, are determined to be secured or unsecured as requested in paragraph 4 above.**

☐ See attached continuation page for additional provisions.

Respectfully submitted,

Date:  10/3/2018                      By:    /s/ Luis A. Solorzano
                                              *Signature of Movant or Attorney for Movant*

                                               Name:  Luis A. Solorzano
                                               *Printed Name of Movant or Attorney for Movant*

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2013*                                Page 5                          **F 3012-1.MOTION.VALUATION**

<u>DECLARATION OF THE DEBTOR AS OWNER OF THE COLLATERAL IN SUPPORT OF
MOTION FOR ORDER DERTERMINING VALUE OF COLLATERAL</u>

1. I, (state debtor's name) <u>Benjamin Isaac Menjivar</u> declare that I am one of the debtors in this bankruptcy case.

2. I make this declaration of my own personal knowledge and if called as a witness, could and would testify thereto.

3. I am the co-owner of the collateral listed in paragraph 1 of the Motion for Order Determining Value of Collateral to which this declaration is attached.

4. My opinion of the value of the Collateral is $<u>749,000.00</u> as of (applicable date) <u>06/23/2018</u> based upon my personal knowledge, including but not limited to:

        ☑ Review of an appraisal (do not attach).
        ☐ Knowledge of comparable sales (do not attach).
        ☐ Other: _____

5. As of (applicable date), the Collateral is subject to the following liens in the amounts specified securing the debt against the Collateral:

| Names of Lien Holders in Order of Priority | Original Lien Amount | Alleged Balance of Lien Amount As of (state applicable date) 11/09/2017 |
|---|---|---|
| 1st Lien: Wells Fargo Bank, N.A. | $551,650.00 | $743,982.40 |
| 2nd Lien: | $ | $ |
| 3rd Lien: | $ | $ |

The foregoing balances are established by true and correct copies of filed proofs of claim, or recent loan statements, or other documents attached to this declaration as Exhibit A.

6. The purpose of the valuation is to provide for treatment of the claim of:

| Names of Lien Holders in Order of Priority | Secured Portion of the Claim | Unsecured Portion of the Claim |
|---|---|---|
| 1st Lien: Wells Fargo Bank, N.A. | $743,982.40 | $0.00 |
| 2nd Lien: | $ | $ |
| 3rd Lien: | $ | $ |

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

*Signature*
Benjamin Isaac Menjivar
*Printed Name*

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2013                Page 6              F 3012-1.MOTION.VALUATION

# EXHIBIT A

**Fill in this information to identify the case:**

Debtor 1    Benjamin Isaac Menjivar aka Benjamin I. Menjivar aka Benjamin Menjivar

Debtor 2    Sara Aura Menjivar aka Sara A. Menjivar aka Sara Menjivar
(Spouse, if filing)

United States Bankruptcy Court for the: Central District of California

Case number 1723881

Read the instructions before filling out this form. Use this form to make a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment. A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571. Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Official Form 410
## Proof of Claim

04/16

| **Part 1:** | **Identify the Claim** |

**1. Who is the current creditor?**    Wells Fargo Bank, N.A.

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**
☒ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Wells Fargo Bank, N.A.
Default Document Processing
N9286-01Y

Name
1000 Blue Gentian Road

Number    Street
Eagan MN 55121-7700

City    State    ZIP Code
Contact phone    800-274-7025

Contact email    POCNOTIFICATIONS@WELLSFARGO.COM

Where should payments to the creditor be sent? (if different)

Wells Fargo Bank, N.A.
Attention: Payment Processing
MAC# X2302-04C

Name
1 Home Campus

Number    Street
Des Moines IA 50328

City    State    ZIP Code
Contact phone    800-274-7025

Contact email    POCNOTIFICATIONS@WELLSFARGO.COM

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

W F C M G E 1 7 2 3 8 8 1 C A C 8 8 7 6 3 7 2 3

**4. Does this claim amend one already filed?** ☒ No ☐ Yes. Claim number on court claims registry (if known) _____ Filed on _____
MM/DD/YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?** ☒ No ☐ Yes. Who made the earlier filing? _____

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?** ☐ No ☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: 3723

**7. How much is the claim?** $ 743,982.40    **Does this amount include interest or other charges?**
☐ No
☒ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**
Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

Money Loaned

**9. Is all or part of the claim secured?**
☐ No
☒ Yes. The claim is secured by a lien on property.

Nature of property:
☒ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
☐ Motor vehicle
☐ Other. Describe:     1129 S 2ND ST  ALHAMBRA CA 91801-4722

Basis for perfection:    Recorded Mortgage/Deed of Trust

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:    $ _____
Amount of the claim that is secured:    $ 743,982.40
Amount of the claim that is unsecured:    $ _____    (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:  $ 266,692.70

Annual Interest Rate (when case was filed) 2.43    %
☐ Fixed
☒ Variable

**10. Is this claim based on a lease?**
☒ No
☐ Yes. Amount necessary to cure any default as of the date of the petition.  $ _____

**11. Is this claim subject to a right of setoff?**
☒ No
☐ Yes. Identify the property: _____

Case 2:17-bk-23881-WB    Doc 128    Filed 10/03/18    Entered 10/03/18 17:24:57    Desc
-*- Demonstration, Powered by HP Exstream, Version 9.0.004-bit -*-
Case 2:17-bk-23881-WB    Claim 3    Filed 01/02/18    Desc Main Document    Page 3 of 20

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | [X] No | |
|---|---|---|
| | ☐ Yes. *Check all that apply:* | Amount entitled to priority |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| | ☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| | ☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the bankruptcy petition is filed or the debtor.s business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $ _____ |
| | * Amounts are subject to adjustment on 4/1/16 and every 3 years after that for cases begun on or after the date of adjustment. | |

---

**Part 3:    Sign Below**

| The person completing this proof of claim must sign and date it. FRBP 9011(b). | Check the appropriate box: |
|---|---|
| | [X] I am the creditor. |
| If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is. | ☐ I am the creditor's attorney or authorized agent. |
| | ☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004. |
| | ☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005. |
| | I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt. |
| | I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct. |
| A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571. | I declare under penalty of perjury that the foregoing is true and correct. |
| | Executed on date ___01/02/2018___ |
| | MM / DD / YYYY |

        /s/ Judi M Upchurch
    _____
    Signature

**Print the name of the person who is completing and signing this claim:**

Name

        Judi                    M                Upchurch
    _____
    First name              Middle name          Last name

Title       Vice President Loan Documentation

Company     Wells Fargo Bank, N.A.
            Identify the corporate servicer as the company if the authorized agent is a servicer.

Address

            Number      Street
            _____

            City                        State    ZIP Code

Contact phone

Email

# Mortgage Proof of Claim Attachment

(12/15)

**If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.**

## Part 1: Mortgage and Case Information

| | |
|---|---|
| Case number: | 1723881 |
| Debtor 1: | Benjamin Isaac Menjivar aka Benjamin I. Menjivar aka Benjamin Menjivar |
| Debtor 2: | Sara Aura Menjivar aka Sara A. Menjivar aka Sara Menjivar |
| Last 4 digits to identify: | 3723 |
| Creditor: | Wells Fargo Bank, N.A. |
| Servicer: | N/A |
| Fixed accrual/daily simple interest/other: | Fixed Accrual |

## Part 2: Total Debt Calculation

| | |
|---|---|
| Principal balance: | 566,972.18 |
| Interest due: | 150,449.44 |
| Fees, costs due: | 473.75 |
| Escrow deficiency for funds advanced: | 27,479.00 |
| Other: | |
| Less total funds on hand: | – 1,391.97 |
| Total debt: | 743,982.40 |

*Not to be used for payoff purposes

## Part 3: Arrearage as of Date of the Petition

| | |
|---|---|
| Principal & interest due: | 230,666.46 |
| Monthly escrow due: | 473.75 |
| Prepetition fees due: | |
| Escrow deficiency for funds advanced: | 27,479.00 |
| Projected escrow shortage: | 9,525.46 |
| Other: | 0.00 |
| Less funds on hand: | – 1,391.97 |
| Total prepetition arrearage: | 266,692.70 |

## Part 4: Monthly Mortgage Payment

| | |
|---|---|
| Principal & interest: | 2,542.98 |
| Monthly escrow: | 439.67 |
| Private mortgage insurance: | 0.00 |
| Optional Products: | 0.00 |
| Total monthly payment: | 2,981.65 |

*Additional changes to the monthly payment amount may be required because interest rate adjustments or escrow requirement changes.

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Contractual Prin, int, and esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01/15/2009 | | | | Beginning Balances | 01/15/2009 | 0.00 | | | | | | 558,912.40 | | 0.00 | 419.34 | 0.00 |
| 01/15/2009 | 2,324.94 | 2,324.94 | | Monthly payment | 01/15/2009 | 2,324.94 | | | | | | 558,912.40 | | 0.00 | 419.34 | 0.00 |
| 01/20/2009 | | | 95.37 | Late Charge | 01/15/2009 | 2,324.94 | | | | | 95.37 | 558,912.40 | | 0.00 | 419.34 | 95.37 |
| 02/15/2009 | 2,324.94 | 2,324.94 | | Monthly payment | 01/15/2009 | 4,649.88 | | | | | | 558,912.40 | | 0.00 | 419.34 | 95.37 |
| 03/02/2009 | | | 95.37 | Late Charge | 01/15/2009 | 4,649.88 | | | | | | 558,912.40 | | 0.00 | 419.34 | 190.74 |
| 03/15/2009 | 2,324.94 | 2,324.94 | | Monthly payment | 01/15/2009 | 6,974.82 | | | | | 95.37 | 558,912.40 | | 0.00 | 419.34 | 190.74 |
| 03/25/2009 | | | 1,818.51 | County tax disbursement | 01/15/2009 | 6,974.82 | | | | -1,818.51 | | 558,912.40 | | 0.00 | -1,399.17 | 190.74 |
| 03/30/2009 | | | 95.37 | Late Charge | 01/15/2009 | 6,974.82 | | | | | | 558,912.40 | | 0.00 | -1,399.17 | 286.11 |
| 04/15/2009 | 2,324.94 | 2,324.94 | | Monthly payment | 01/15/2009 | 9,296.76 | | | | | 95.37 | 558,912.40 | | 0.00 | -1,399.17 | 286.11 |
| 05/15/2009 | 2,324.94 | 2,324.94 | | Monthly payment | 01/15/2009 | 11,624.70 | | | | | | 558,912.40 | | 0.00 | -1,399.17 | 286.11 |
| 06/15/2009 | 2,324.94 | 2,324.94 | | Monthly payment | 01/15/2009 | 13,949.64 | | | | | | 558,912.40 | | 0.00 | -1,399.17 | 286.11 |
| 07/15/2009 | 2,324.94 | 2,324.94 | | Monthly payment | 01/15/2009 | 16,274.58 | | | | | | 558,912.40 | | 0.00 | -1,399.17 | 286.11 |
| 07/30/2009 | | | 95.37 | Late Charge | 01/15/2009 | 16,274.58 | | | | | 95.37 | 558,912.40 | | 0.00 | -1,399.17 | 381.48 |
| 08/15/2009 | 2,324.94 | 2,324.94 | | Monthly payment | 01/15/2009 | 18,599.52 | | | | | | 558,912.40 | | 0.00 | -1,399.17 | 381.48 |

Case 2:17-bk-23881-WB    Doc ...    Filed 10/03/...    Entered ...    Desc    Main Document    Page 5 of 20

(12/15)

# Mortgage Proof of Claim Attachment: Additional Page

Case number: 1723881

Debtor 1: Benjamin Isaac Menjivar aka Benjamin L Menjivar aka Benjamin Menjivar

## Part 5 : Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual Prin, int & due date | G. Contractual Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 08/31/2009 | | | 95.37 | Late Charge | 01/15/2009 | 18,599.52 | | | | | | | | | | 476.85 |
| 09/15/2009 | 2,324.94 | | | Monthly payment | 01/15/2009 | 20,924.46 | | | | | | 558,912.40 | | 0.00 | -1,399.17 | 476.85 |
| 09/30/2009 | | | 102.52 | Late Charge | 01/15/2009 | 20,924.46 | | | | | | 558,912.40 | | 0.00 | -1,399.17 | 579.37 |
| 10/15/2009 | 2,324.94 | | | Monthly payment | 01/15/2009 | 23,249.40 | | | | | 102.52 | 558,912.40 | | 0.00 | -1,399.17 | 579.37 |
| 11/15/2009 | 2,324.94 | | | Monthly payment | 01/15/2009 | 25,574.34 | | | | | | 558,912.40 | | 0.00 | -1,399.17 | 579.37 |
| 11/27/2009 | | | 1,880.92 | County tax disbursement | 01/15/2009 | 25,574.34 | | | | -1,880.92 | | 558,912.40 | | 0.00 | -3,280.09 | 579.37 |
| 12/15/2009 | 2,324.94 | | | Monthly payment | 01/15/2009 | 27,899.28 | | | | | | 558,912.40 | | 0.00 | -3,280.09 | 579.37 |
| 12/31/2009 | | 1.98 | | Interest on Escrow deposit | 01/15/2009 | 27,899.28 | | | 0.00 | 1.98 | 0.00 | 558,912.40 | | 0.00 | -3,278.11 | 579.37 |
| 01/04/2010 | | | 834.00 | Hazard Insurance Disbursement | 01/15/2009 | 27,899.28 | | | | -834.00 | | 558,912.40 | | 0.00 | -4,112.11 | 579.37 |
| 01/15/2010 | 2,324.94 | | | Monthly payment | 01/15/2009 | 30,224.22 | | | | | | 558,912.40 | | 0.00 | -4,112.11 | 579.37 |
| 02/15/2010 | 2,324.94 | | | Monthly payment | 01/15/2009 | 32,549.16 | | | | | | 558,912.40 | | 0.00 | -4,112.11 | 579.37 |
| 03/15/2010 | 2,441.83 | | | Monthly payment | 01/15/2009 | 34,990.99 | | | | | | 558,912.40 | | 0.00 | -4,112.11 | 579.37 |
| 03/25/2010 | | | 1,880.91 | County tax disbursement | 01/15/2009 | 34,990.99 | | | | -1,880.91 | | 558,912.40 | | 0.00 | -5,993.02 | 579.37 |
| 03/30/2010 | | | 102.52 | Late Charge | 01/15/2009 | 34,990.99 | | | | | 102.52 | 558,912.40 | | 0.00 | -5,993.02 | 681.89 |
| 04/15/2010 | 2,441.83 | | | Monthly payment | 01/15/2009 | 37,432.82 | | | | | | 558,912.40 | | 0.00 | -5,993.02 | 681.89 |
| 04/30/2010 | | | 102.52 | Late Charge | 01/15/2009 | 37,432.82 | | | | | 102.52 | 558,912.40 | | 0.00 | -5,993.02 | 784.41 |
| 05/15/2010 | 2,441.83 | | | Monthly payment | 01/15/2009 | 39,874.65 | | | | | | 558,912.40 | | 0.00 | -5,993.02 | 784.41 |
| 05/31/2010 | | | 102.52 | Late Charge | 01/15/2009 | 39,874.65 | | | | | 102.52 | 558,912.40 | | 0.00 | -5,993.02 | 886.93 |
| 06/15/2010 | 2,441.83 | | | Monthly payment | 01/15/2009 | 42,316.48 | | | | | | 558,912.40 | | 0.00 | -5,993.02 | 886.93 |
| 07/15/2010 | 2,441.83 | | | Monthly payment | 01/15/2009 | 44,758.31 | | | | | | 558,912.40 | | 0.00 | -5,993.02 | 886.93 |
| 07/30/2010 | | | 102.52 | Late Charge | 01/15/2009 | 44,758.31 | | | | | 102.52 | 558,912.40 | | 0.00 | -5,993.02 | 989.45 |
| 08/15/2010 | 2,441.83 | | | Monthly payment | 01/15/2009 | 47,200.14 | | | | | | 558,912.40 | | 0.00 | -5,993.02 | 989.45 |

Case 2:17-bk-23881-WB    Doc 114-1    Filed 11/02/17    Entered 11/02/17    Document
Page 6 of 20

(12/15)

# Mortgage Proof of Claim Attachment: Additional Page

Case number: 1722861

Debtor 1: Benjamin Isaac Menjivar aka Benjamin I. Menjivar aka Benjamin Menjivar

## Part 5 - Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual Prin, int & due date | G. Contractual Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 08/16/2010 | | | 10.00 | Property inspection fees | 01/15/2009 | 47,200.14 | | | | | 10.00 | 558,912.40 | | 0.00 | -5,993.02 | 999.45 |
| 08/18/2010 | | | 1,266.36 | Attorney's fees | 01/15/2009 | 47,200.14 | | | | | 1,266.36 | 558,912.40 | | 0.00 | -5,993.02 | 2,265.81 |
| 09/13/2010 | | | 10.00 | Property inspection fees | 01/15/2009 | 47,200.14 | | | | | 10.00 | 558,912.40 | | 0.00 | -5,993.02 | 2,275.81 |
| 09/15/2010 | 2,595.61 | | | Monthly payment | 01/15/2009 | 49,795.75 | | | | | | 558,912.40 | | 0.00 | -5,993.02 | 2,275.81 |
| 09/30/2010 | | | 110.21 | Late Charge | 01/15/2009 | 49,795.75 | | | | | 110.21 | 558,912.40 | | 0.00 | -5,993.02 | 2,386.02 |
| 10/11/2010 | | | 10.00 | Property inspection fees | 01/15/2009 | 49,795.75 | | | | | 10.00 | 558,912.40 | | 0.00 | -5,993.02 | 2,396.02 |
| 10/15/2010 | 2,595.61 | | | Monthly payment | 01/15/2009 | 52,391.36 | | | | | | 558,912.40 | | 0.00 | -5,993.02 | 2,396.02 |
| 10/30/2010 | | | 110.21 | Late Charge | 01/15/2009 | 52,391.36 | | | | | 110.21 | 558,912.40 | | 0.00 | -5,993.02 | 2,506.23 |
| 11/03/2010 | | | 70.00 | Appraisal/broker's price opinion fees | 01/15/2009 | 52,391.36 | | | | | 70.00 | 558,912.40 | | 0.00 | -5,993.02 | 2,576.23 |
| 11/15/2010 | 2,595.61 | | | Monthly payment | 01/15/2009 | 54,986.97 | | | | | | 558,912.40 | | 0.00 | -5,993.02 | 2,576.23 |
| 11/15/2010 | | | 1,924.38 | County tax disbursement | 01/15/2009 | 54,986.97 | | | | -1,924.38 | | 558,912.40 | | 0.00 | -7,917.40 | 2,576.23 |
| 11/15/2010 | | | 20.00 | Property inspection fees | 01/15/2009 | 54,986.97 | | | | | 20.00 | 558,912.40 | | 0.00 | -7,917.40 | 2,596.23 |
| 11/30/2010 | | | 110.21 | Late Charge | 01/15/2009 | 54,986.97 | | | | | 110.21 | 558,912.40 | | 0.00 | -7,917.40 | 2,706.44 |
| 12/09/2010 | | | 709.02 | Attorney's fees | 01/15/2009 | 54,986.97 | | | | | 709.02 | 558,912.40 | | 0.00 | -7,917.40 | 3,415.46 |
| 12/13/2010 | | | 20.00 | Property inspection fees | 01/15/2009 | 54,986.97 | | | | | 20.00 | 558,912.40 | | 0.00 | -7,917.40 | 3,435.46 |
| 12/15/2010 | 2,595.61 | | | Monthly payment | 01/15/2009 | 57,582.58 | | | | | | 558,912.40 | | 0.00 | -7,917.40 | 3,435.46 |
| 12/16/2010 | | | 853.00 | Hazard Insurance Disbursement | 01/15/2009 | 57,582.58 | | | | -853.00 | | 558,912.40 | | 0.00 | -8,770.40 | 3,435.46 |
| 12/20/2010 | | | 110.21 | Late Charge | 01/15/2009 | 57,582.58 | | | | | 110.21 | 558,912.40 | | 0.00 | -8,770.40 | 3,545.67 |
| 01/10/2011 | | | 20.00 | Property inspection fees | 01/15/2009 | 57,582.58 | | | | | 20.00 | 558,912.40 | | 0.00 | -8,770.40 | 3,565.67 |

Official Form 410A

**Mortgage Proof of Claim Attachment**

Case 2:17-bk-23881-WB   Doc 102   Filed 01/02/18   Entered ...   Document   Page 7 of 20

(12/15)

# Mortgage Proof of Claim Attachment: Additional Page

| Case number: | 1723881 |
|---|---|
| Debtor 1: | Benjamin Isaac Menjivar aka Benjamin I. Menjivar aka Benjamin Menjivar |

## Part 5 : Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Contractual Prin, int, & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01/15/2011 | 2,595.61 | | | Monthly payment | 01/15/2009 | 60,178.19 | | | | | | 558,912.40 | | 0.00 | -8,770.40 | |
| 01/31/2011 | | | 110.21 | Late Charge | 01/15/2009 | 60,178.19 | | | | | 110.21 | 558,912.40 | | 0.00 | -8,770.40 | 3,565.67 |
| 02/12/2011 | | | 20.00 | Property inspection fees | 01/15/2009 | 60,178.19 | | | | | 20.00 | 558,912.40 | | 0.00 | -8,770.40 | 3,575.88 |
| 02/15/2011 | 2,595.61 | | | Monthly payment | 01/15/2009 | 62,773.80 | | | | | | 558,912.40 | | 0.00 | -8,770.40 | 3,695.88 |
| 02/17/2011 | | 2,246.67 | | Payment | 01/15/2009 | 62,773.80 | 0.00 | | 0.00 | 0.00 | 2,246.67 | 558,912.40 | | 0.00 | -8,770.40 | 3,695.88 |
| 03/01/2011 | | 0.00 | | Payment | 01/15/2009 | 62,773.80 | 0.00 | | 0.00 | 0.00 | -101.29 | 558,912.40 | | 0.00 | -8,770.40 | 3,594.59 |
| 03/01/2011 | | | 20.00 | Property inspection fees | 01/15/2009 | 62,773.80 | | | | | -20.00 | 558,912.40 | | 0.00 | -8,770.40 | 3,574.59 |
| 03/01/2011 | | | 80.00 | Property inspection fees | 01/15/2009 | 62,773.80 | | | | | -80.00 | 558,912.40 | | 0.00 | -8,770.40 | 3,494.59 |
| 03/01/2011 | | | 70.00 | Property inspection fees | 01/15/2009 | 62,773.80 | | | | | -70.00 | 558,912.40 | | 0.00 | -8,770.40 | 3,424.59 |
| 03/01/2011 | | | 1,975.38 | Appraisal/broker's price opinion fees | 01/15/2009 | 62,773.80 | | | | | -1,975.38 | 558,912.40 | | 0.00 | -8,770.40 | 1,449.21 |
| 03/12/2011 | | | | FC ATTORNEY FEE | 01/15/2009 | 62,773.80 | | | | | | 558,912.40 | | 0.00 | -8,770.40 | |
| 03/14/2011 | | | 110.21 | Late Charge | 01/15/2009 | 62,773.80 | | | | | 110.21 | 558,912.40 | | 0.00 | -8,770.40 | 1,559.42 |
| 03/15/2011 | | | 20.00 | Property inspection fees | 01/15/2009 | 62,773.80 | | | | | 20.00 | 558,912.40 | | 0.00 | -8,770.40 | 1,579.42 |
| 03/15/2011 | 2,595.61 | | | Monthly payment | 01/15/2009 | 65,369.41 | | | | | | 558,912.40 | | 0.00 | -8,770.40 | 1,579.42 |
| 03/15/2011 | | 2,246.67 | | Payment | 01/15/2009 | 65,369.41 | 0.00 | | 0.00 | 0.00 | 2,246.67 | 558,912.40 | | 0.00 | -8,770.40 | 1,579.42 |
| 03/16/2011 | | 0.00 | | Payment | 01/15/2009 | 65,369.41 | 0.00 | | 0.00 | 0.00 | -989.99 | 558,912.40 | | 0.00 | -8,770.40 | 579.43 |
| 03/16/2011 | | 0.00 | | Payment | 01/15/2009 | 65,369.41 | 0.00 | | 0.00 | 0.00 | -549.43 | 558,912.40 | | 0.00 | -8,770.40 | 30.00 |
| 03/16/2011 | | | 20.00 | Property inspection fees | 01/15/2009 | 65,369.41 | | | | | -20.00 | 558,912.40 | | 0.00 | -8,770.40 | 10.00 |
| 03/16/2011 | | | 10.00 | Property inspection fees | 01/15/2009 | 65,369.41 | | | | | -10.00 | 558,912.40 | | 0.00 | -8,770.40 | 0.00 |
| 03/24/2011 | | | 1,924.38 | County tax disbursement | 01/15/2009 | 65,369.41 | | | -1,924.38 | | | 558,912.40 | | 0.00 | -10,694.78 | 0.00 |
| 03/30/2011 | | | 110.21 | Late Charge | 01/15/2009 | 65,369.41 | | | | | 110.21 | 558,912.40 | | 0.00 | -10,694.78 | 110.21 |

Case 2:17-bk-23881-WB   Doc ...   Filed 11/02/...   Entered ... Document   Page 6 of 20

(12/15)

# Mortgage Proof of Claim Attachment: Additional Page

Case number: 1723881

Debtor 1: Benjamin Isaac Menjivar aka Benjamin I. Menjivar aka Benjamin Menjivar

## Part 5 - Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Contractual Prin, int, & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 04/01/2011 | | | 0.00 | Reversal | 01/15/2009 | 65,369.41 | 0.00 | 0.00 | 0.00 | 0.00 | 999.99 | 558,912.40 | 0.00 | -10,694.78 | 1,110.20 | 0.00 |
| 04/01/2011 | | | 0.00 | Reversal | 01/15/2009 | 65,369.41 | 0.00 | 0.00 | 0.00 | 0.00 | 650.72 | 558,912.40 | 0.00 | -10,694.78 | 1,760.92 | 0.00 |
| 04/01/2011 | | 1,650.71 | | Payment | 01/15/2009 | 65,369.41 | 0.00 | 0.00 | 0.00 | 0.00 | 1,650.71 | 558,912.40 | 0.00 | -10,694.78 | 1,760.92 | 0.00 |
| 04/04/2011 | | | 90.00 | Property inspection fees | 01/15/2009 | 65,369.41 | | | | | 90.00 | 558,912.40 | 0.00 | -10,694.78 | 1,850.92 | 0.00 |
| 04/04/2011 | | | 40.00 | Property inspection fees | 01/15/2009 | 65,369.41 | | | | | 40.00 | 558,912.40 | 0.00 | -10,694.78 | 1,890.92 | 0.00 |
| 04/04/2011 | | | 70.00 | Appraisal/broker's price opinion fees | 01/15/2009 | 65,369.41 | | | | | 70.00 | 558,912.40 | 0.00 | -10,694.78 | 1,960.92 | 0.00 |
| 04/04/2011 | | | 1,975.38 | Attorney's fees | 01/15/2009 | 65,369.41 | | | | | 1,975.38 | 558,912.40 | 0.00 | -10,694.78 | 3,936.30 | 0.00 |
| 04/05/2011 | | 90.00 | | Payment | 01/15/2009 | 65,369.41 | | 0.00 | 0.00 | 0.00 | 90.00 | 558,912.40 | 0.00 | -10,694.78 | 3,936.30 | 0.00 |
| 04/05/2011 | | 40.00 | | Payment | 01/15/2009 | 65,369.41 | | 0.00 | 0.00 | 0.00 | 40.00 | 558,912.40 | 0.00 | -10,694.78 | 3,936.30 | 0.00 |
| 04/05/2011 | | 70.00 | | Payment | 01/15/2009 | 65,369.41 | | 0.00 | 0.00 | 0.00 | 70.00 | 558,912.40 | 0.00 | -10,694.78 | 3,936.30 | 0.00 |
| 04/11/2011 | | 1,975.38 | | Payment | 01/15/2009 | 65,369.41 | | 0.00 | 0.00 | 0.00 | 1,975.38 | 558,912.40 | 0.00 | -10,694.78 | 3,936.30 | 0.00 |
| 04/11/2011 | | | 20.00 | Property inspection fees | 01/15/2009 | 65,369.41 | | | | | 20.00 | 558,912.40 | 0.00 | -10,694.78 | 3,966.30 | 0.00 |
| 04/13/2011 | | 0.00 | | Payment | 01/15/2009 | 65,369.41 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 558,912.40 | 0.00 | -10,694.78 | 3,685.01 | 0.00 |
| 04/13/2011 | | 2,246.67 | | Payment | 01/15/2009 | 65,369.41 | | | | | -271.29 | 558,912.40 | 0.00 | -10,694.78 | 3,685.01 | 0.00 |
| 04/13/2011 | | 1,975.38 | | Payment | 01/15/2009 | 65,369.41 | | | | | 2,246.67 | 558,912.40 | 0.00 | -10,694.78 | 3,685.01 | 0.00 |
| 04/14/2011 | | | | FC ATTORNEY FEE | 01/15/2009 | 65,369.41 | | | | | -1,975.38 | 558,912.40 | 0.00 | -10,694.78 | 3,685.01 | 0.00 |
| 04/14/2011 | | 0.00 | | Payment | 01/15/2009 | 63,044.47 | -854.56 | 2,761.96 | 339.27 | | -2,246.67 | 559,766.96 | 0.00 | -10,355.51 | 1,708.63 | 0.00 |
| 04/15/2011 | 2,595.61 | | | Monthly payment | 02/15/2009 | 65,640.08 | | | | | | 559,766.96 | 0.00 | -10,355.51 | 1,709.63 | 0.00 |
| 04/30/2011 | | | 110.21 | Late Charge | 02/15/2009 | 65,640.08 | | | | | 110.21 | 559,766.96 | 0.00 | -10,355.51 | 1,819.84 | 0.00 |
| 05/15/2011 | 2,595.61 | | | Monthly payment | 02/15/2009 | 68,235.69 | | | | | | 559,766.96 | 0.00 | -10,355.51 | 1,819.84 | 0.00 |
| 05/16/2011 | | | 20.00 | Property inspection fees | 02/15/2009 | 68,235.69 | | | | | 20.00 | 559,766.96 | 0.00 | -10,355.51 | 1,839.84 | 0.00 |
| 05/30/2011 | | | 110.21 | Late Charge | 02/15/2009 | 68,235.69 | | | | | 110.21 | 559,766.96 | 0.00 | -10,355.51 | 1,950.05 | 0.00 |

Case 2:17-bk-23881-WB   Doc 128   Filed 10/03/18   Entered 10/03/18 17:24:57   Desc
Main Document   Page 9 of 90

# Mortgage Proof of Claim Attachment: Additional Page

(12/15)

Case number: 1723881

Debtor 1: Benjamin Isaac Menjivar aka Benjamin I. Menjivar aka Benjamin Menjivar

## Part 5 - Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual Prin. due date | G. Contractual Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 06/13/2011 | | | 20.00 | Property inspection fees | | 68,235.69 | | | | | 20.00 | 559,766.96 | | 0.00 | -10,355.51 | 1,970.05 |
| 06/15/2011 | 2,595.61* | | | Monthly payment | 02/15/2009 | 70,831.30 | | | | | | 559,766.96 | | 0.00 | -10,355.51 | 1,970.05 |
| 06/30/2011 | | | 110.21 | Late Charge | 02/15/2009 | 70,831.30 | | | | | 110.21 | 559,766.96 | | 0.00 | -10,355.51 | 2,680.26 |
| 07/11/2011 | | | 20.00 | Property inspection fees | 02/15/2009 | 70,831.30 | | | | | 20.00 | 559,766.96 | | 0.00 | -10,355.51 | 2,100.26 |
| 07/15/2011 | 2,595.61 | | | Monthly payment | 02/15/2009 | 73,426.91 | | | | | | 559,766.96 | | 0.00 | -10,355.51 | 2,100.26 |
| 07/30/2011 | | | 110.21 | Late Charge | 02/15/2009 | 73,426.91 | | | | | 110.21 | 559,766.96 | | 0.00 | -10,355.51 | 2,210.47 |
| 08/15/2011 | 2,595.61 | | | Monthly payment | 02/15/2009 | 76,022.52 | | | | | | 559,766.96 | | 0.00 | -10,355.51 | 2,210.47 |
| 09/15/2011 | | | 20.00 | Property inspection fees | 02/15/2009 | 76,022.52 | | | | | 20.00 | 559,766.96 | | 0.00 | -10,355.51 | 2,230.47 |
| 08/30/2011 | | | 110.21 | Late Charge | 02/15/2009 | 76,022.52 | | | | | 110.21 | 559,766.96 | | 0.00 | -10,355.51 | 2,340.68 |
| 09/11/2011 | | | 20.00 | Property inspection fees | 02/15/2008 | 76,022.52 | | | | | 20.00 | 559,766.96 | | 0.00 | -10,355.51 | 2,360.68 |
| 09/15/2011 | 2,760.92 | | | Monthly payment | 02/15/2009 | 78,783.44 | | | | | | 559,766.96 | | 0.00 | -10,355.51 | 2,360.68 |
| 09/30/2011 | | | 118.48 | Late Charge | 02/15/2009 | 78,783.44 | | | | | 118.48 | 559,766.96 | | 0.00 | -10,355.51 | 2,479.16 |
| 10/10/2011 | | | 20.00 | Property inspection fees | 02/15/2009 | 78,783.44 | | | | | 20.00 | 559,766.96 | | 0.00 | -10,355.51 | 2,499.16 |
| 10/15/2011 | 2,760.92 | | | Monthly payment | 02/15/2009 | 81,544.36 | | | | | | 559,766.96 | | 0.00 | -10,355.51 | 2,499.16 |
| 10/26/2011 | | | 800.00 | Attorney's fees | 02/15/2009 | 81,544.36 | | | | | 800.00 | 559,766.96 | | 0.00 | -10,355.51 | 3,299.16 |
| 10/27/2011 | | 0.00 | | Payment | 02/15/2009 | 81,544.36 | | 0.00 | | 0.00 | -999.99 | 559,766.96 | | 0.00 | -10,355.51 | 2,299.17 |
| 10/27/2011 | | 0.00 | | Payment | 02/15/2009 | 81,544.36 | | 0.00 | | 0.00 | -106.68 | 559,766.96 | | 0.00 | -10,355.51 | 2,192.49 |
| 10/27/2011 | | 180.00 | | Property inspection fees | 02/15/2009 | 81,544.36 | | | | | -180.00 | 559,766.96 | | 0.00 | -10,355.51 | 2,012.49 |
| 10/27/2011 | | 90.00 | | Property inspection fees | 02/15/2009 | 81,544.36 | | | | | -90.00 | 559,766.96 | | 0.00 | -10,355.51 | 1,922.49 |
| 10/27/2011 | | 70.00 | | Appraisal/broker's price opinion fees | 02/15/2008 | 81,544.36 | | | | | -70.00 | 559,766.96 | | 0.00 | -10,355.51 | 1,852.49 |

Case 2:17-bk-23881-WB    Doc ... Filed 10/03/18 ... Document ... Page 16 of ...

(12/15)

## Mortgage Proof of Claim Attachment: Additional Page

Case number: 1722881

Debtor 1: Benjamin Isaac Menjivar aka Benjamin L Menjivar aka Benjamin Menjivar

### Part 5 : Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual Prin, int & due date | G. esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/27/2011 | | | 800.00 | Attorney's fees | 02/15/2009 | 81,544.36 | | | | | -800.00 | 559,766.96 | 0.00 | 0.00 | -10,355.51 | 1,052.49 |
| 11/13/2011 | | | 20.00 | Property inspection fees | 02/15/2009 | 81,544.36 | | | | | 20.00 | 559,766.96 | 0.00 | 0.00 | -10,355.51 | 1,072.49 |
| 11/15/2011 | 2,760.92 | | | Monthly payment | 02/15/2009 | 84,305.28 | | | | | | 559,766.96 | 0.00 | 0.00 | -10,355.51 | 1,072.49 |
| 12/17/2011 | | | 20.00 | Property inspection fees | 02/15/2009 | 84,305.28 | | | | | 20.00 | 559,766.96 | 0.00 | 0.00 | -10,355.51 | 1,092.49 |
| 12/13/2011 | | | 791.00 | Hazard Insurance Disbursement | 02/15/2009 | 84,305.28 | | | | -791.00 | | 559,766.96 | 0.00 | 0.00 | -11,146.51 | 1,092.49 |
| 12/15/2011 | 2,760.92 | | | Monthly payment | 02/15/2009 | 87,066.20 | | | | | | 559,766.96 | 0.00 | 0.00 | -11,146.51 | 1,092.49 |
| 01/06/2012 | | 1,964.55 | | Payment | 02/15/2009 | 87,066.20 | -849.45 | | | 0.00 | 1,964.55 | 559,766.96 | 0.00 | 0.00 | -11,146.51 | 1,112.49 |
| 01/15/2012 | 2,760.92 | | | Monthly payment | 02/15/2009 | 89,827.12 | | | | | | 559,766.96 | 0.00 | 0.00 | -11,146.51 | 1,112.49 |
| 01/15/2012 | | | 20.00 | Property inspection fees | 02/15/2009 | 89,827.12 | | | | | 20.00 | 559,766.96 | 0.00 | 0.00 | -11,146.51 | 1,112.49 |
| 02/01/2012 | | 1,964.55 | | Payment | 02/15/2009 | 89,827.12 | -849.45 | 2,756.85 | | 0.00 | 1,964.55 | 559,766.96 | 0.00 | 0.00 | -11,146.51 | 1,132.49 |
| 02/02/2012 | | 0.00 | | Payment | 02/15/2009 | 89,827.12 | 849.45 | -2,756.85 | | 398.54 | -2,306.94 | 560,616.41 | 0.00 | 0.00 | -11,146.51 | 1,132.49 |
| 02/15/2012 | | | 20.00 | Property inspection fees | 03/01/2009 | 89,827.12 | | | | | 20.00 | 560,616.41 | 0.00 | 0.00 | -11,146.51 | 1,132.49 |
| 03/01/2012 | 2,760.92 | | | Monthly payment | 03/01/2009 | 92,588.04 | | | | | | 560,616.41 | 0.00 | 0.00 | -11,146.51 | 1,132.49 |
| 03/02/2012 | | 1,964.55 | | Payment | 03/01/2009 | 94,912.98 | -849.45 | 2,756.85 | | 0.00 | 1,964.55 | 560,616.41 | 0.00 | 0.00 | -11,146.51 | 1,152.49 |
| 03/12/2012 | 2,760.92 | | | Monthly payment | 02/01/2009 | 94,912.98 | | | | | | 559,766.96 | 0.00 | 0.00 | -11,146.51 | 1,152.49 |
| 03/12/2012 | | 2,306.94 | | Reversal | 02/01/2009 | 94,912.98 | -2,756.85 | 0.00 | | -399.54 | 2,306.94 | 560,616.41 | 0.00 | 0.00 | -11,146.51 | 1,152.49 |
| 03/12/2012 | | 0.00 | | Payment | 02/01/2009 | 92,588.04 | 2,756.85 | | | 399.54 | | 560,616.41 | 0.00 | 0.00 | -10,746.97 | 1,152.49 |
| 03/17/2012 | | | | Payment | 02/01/2009 | 92,588.04 | -820.93 | 2,728.33 | | 398.54 | -4,613.88 | 561,437.34 | 0.00 | 0.00 | -10,746.97 | 1,152.49 |
| 03/12/2012 | 2,760.92 | | | Monthly payment | 03/01/2009 | 95,348.96 | | | | | | 561,437.34 | 0.00 | 0.00 | -10,347.43 | 1,152.49 |
| 03/15/2012 | | 0.00 | | Payment | 03/01/2009 | 95,348.96 | 820.93 | 2,728.33 | | | | 561,437.34 | 0.00 | 0.00 | -10,347.43 | 1,152.49 |
| 03/21/2012 | | 0.00 | | Reversal | 03/01/2009 | 97,673.90 | -2,728.33 | -2,728.33 | | -399.54 | | 560,616.41 | 0.00 | 0.00 | -10,746.97 | 1,152.49 |

Case 2:17-bk-23881-WB    Doc 110-4    Filed 01/02/18    Entered 01/02/18    Desc
Main Document    Page 18 of 90
-20-

(12/15)

# Mortgage Proof of Claim Attachment: Additional Page

Case number: 1723881

Debtor 1: Benjamin Isaac Menjivar aka Benjamin I. Menjivar aka Benjamin Menjivar

## Part 5 : Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual Prin. int. & due date | G. Prin. int. & esc past due balance | How Funds Were Applied/Amount Incurred | | | | L. Unapplied funds | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 03/21/2012 | | | 0.00 | Reversal | | 97,673.30 | 849.45 | | -2,756.85 | -389.54 | | 559,766.96 | | 0.00 | -11,146.51 | 1,152.49 |
| 03/21/2012 | | 4,613.88 | | Payment | 02/01/2009 | 97,673.90 | | 0.00 | 0.00 | | 4,613.88 | 559,766.98 | | 0.00 | -11,146.51 | 1,152.49 |
| 04/03/2012 | | 1,964.55 | | Payment | 02/01/2009 | 97,673.90 | | 0.00 | 0.00 | | 1,964.55 | 559,766.96 | | 0.00 | -11,146.51 | 1,152.49 |
| 04/15/2012 | 2,760.92 | | | Monthly payment | 02/01/2009 | 100,434.82 | | | | | | 559,766.96 | | 0.00 | -11,146.51 | 1,152.49 |
| 04/17/2012 | | | 15.00 | Property inspection fees | 02/01/2009 | 100,434.82 | | | | | | 559,766.96 | | 0.00 | -11,146.51 | 1,167.49 |
| 04/25/2012 | | 0.00 | | Payment | 02/01/2009 | 98,109.68 | -849.45 | 2,756.85 | | 399.54 | 15.00 | 560,616.41 | | 0.00 | -10,746.97 | 1,167.49 |
| 04/25/2012 | | 0.00 | | Payment | 03/01/2009 | 95,784.94 | -820.93 | 2,728.33 | 399.54 | | | 561,437.34 | | 0.00 | -10,347.43 | 1,167.49 |
| 04/25/2012 | | | 75.00 | Property inspection fees | 04/01/2009 | 95,784.94 | 0.00 | | 0.00 | 1,164.77 | -75.00 | 561,437.34 | | 0.00 | -9,182.66 | 1,092.49 |
| 05/02/2012 | | | 40.00 | Property inspection fees | 04/01/2009 | 95,784.94 | | | | | -40.00 | 561,437.34 | | 0.00 | -9,182.66 | 1,052.49 |
| 05/09/2012 | | 1,964.00 | | Payment | 04/01/2009 | 95,784.94 | | 0.00 | 0.00 | | 1,964.00 | 561,437.34 | | 0.00 | -9,182.66 | 1,052.49 |
| 05/09/2012 | | | 1,952.74 | County tax disbursement | 04/01/2009 | 95,784.94 | | | | -1,952.74 | | 561,437.34 | | 0.00 | -11,135.40 | 1,052.49 |
| 05/09/2012 | | | 1,952.73 | County tax disbursement | 04/01/2009 | 95,784.94 | | | | -1,952.73 | | 561,437.34 | | 0.00 | -13,088.13 | 1,052.49 |
| 05/09/2012 | | 1.00 | | Payment | 04/01/2009 | 95,784.94 | | 0.00 | 0.00 | | 1.00 | 561,437.34 | | 0.00 | -13,088.13 | 1,052.49 |
| 05/15/2012 | 2,760.92 | | | Monthly payment | 04/01/2009 | 98,545.86 | | | | | | 561,437.34 | | 0.00 | -13,088.13 | 1,052.49 |
| 05/18/2012 | | 951.52 | | Payment | 04/01/2009 | 98,545.86 | | 0.00 | 0.00 | | 951.52 | 561,437.34 | | 0.00 | -13,088.13 | 1,052.49 |
| 06/04/2012 | | 1,066.74 | | Payment | 04/01/2009 | 98,545.86 | | 0.00 | 0.00 | | 1,066.74 | 561,437.34 | | 0.00 | -13,088.13 | 1,052.49 |
| 06/04/2012 | | 2.19 | | Payment | 04/01/2009 | 98,545.86 | | 0.00 | 0.00 | | 2.19 | 561,437.34 | | 0.00 | -13,088.13 | 1,052.49 |
| 06/08/2012 | | | 10.00 | Property inspection fees | 04/01/2009 | 98,545.86 | | | | | -10.00 | 561,437.34 | | 0.00 | -13,088.13 | 1,042.49 |
| 06/15/2012 | 2,760.92 | | | Monthly payment | 04/01/2009 | 101,306.78 | | | | | | 561,437.34 | | 0.00 | -13,088.13 | 1,042.49 |
| 06/26/2012 | | 950.84 | | Payment | 04/01/2009 | 101,306.78 | | 0.00 | 0.00 | | 950.84 | 561,437.34 | | 0.00 | -13,088.13 | 1,042.49 |

(12/15)

## Mortgage Proof of Claim Attachment: Additional Page

Case number: 1723881

Debtor 1: Benjamin Isaac Menjivar aka Benjamin I. Menjivar aka Benjamin Menjivar

### Part 5 : Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual Prin, int, & due date | G. esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 07/03/2012 | | 1,966.74 | | Payment | 04/01/2009 | 101,306.78 | 0.00 | 0.00 | | 0.00 | 1,966.74 | 561,437.34 | 0.00 | 0.00 | -13,088.13 | 1,042.49 |
| 07/03/2012 | | 900.00 | | Payment | 04/01/2009 | 98,981.84 | -782.82 | 2,690.22 | | 399.54 | -1,406.94 | 562,220.16 | 0.00 | 0.00 | -12,688.59 | 1,042.49 |
| 07/15/2012 | 2,760.92 | | | Monthly payment | 05/01/2009 | 101,742.76 | | | | | | 562,220.16 | | | -12,688.59 | 1,042.49 |
| 07/24/2012 | | 950.16 | | Payment | 05/01/2009 | 101,742.76 | 0.00 | 0.00 | | 0.00 | 950.16 | 562,220.16 | 0.00 | 0.00 | -12,688.59 | 1,042.49 |
| 08/02/2012 | | 0.00 | | Payment | 05/01/2009 | 101,742.76 | 0.00 | 0.00 | | 0.00 | | 562,220.16 | 0.00 | 0.00 | -10,727.72 | 1,042.49 |
| 08/02/2012 | | 0.00 | | Payment | 05/01/2009 | 101,742.76 | 0.00 | 0.00 | | 1,960.87 | -1,960.87 | 562,220.16 | 0.00 | 0.00 | -10,727.72 | 150.84 |
| 08/08/2012 | | | | Payment | 05/01/2009 | 101,742.76 | 0.00 | 0.00 | | -891.65 | -891.65 | 562,220.16 | 0.00 | 0.00 | -10,727.72 | 150.84 |
| 08/15/2012 | 2,760.92 | 1,966.00 | | Monthly payment | 05/01/2009 | 104,503.68 | | | | | 1,966.00 | 562,220.16 | 0.00 | 0.00 | -10,727.72 | 150.84 |
| 08/24/2012 | | | 0.00 | HAMP COMPLETED | 05/01/2009 | 104,503.68 | | | | -15.00 | | | | | -10,727.72 | 150.84 |
| 09/09/2012 | | 1,966.74 | | Payment | 05/01/2009 | 102,178.74 | -786.57 | 2,693.97 | | 417.54 | -2,324.94 | 563,006.73 | 0.00 | 0.00 | -10,310.18 | 135.84 |
| 09/13/2012 | | 1,966.74 | | Payment | 06/01/2009 | 99,853.80 | -766.88 | 2,674.28 | | 417.54 | -359.20 | 563,773.61 | 0.00 | 0.00 | -9,892.64 | 135.84 |
| 09/15/2012 | 2,938.63 | | | Monthly payment | 07/01/2009 | 102,792.43 | | | | | | 563,773.61 | | | -9,892.64 | 135.84 |
| 10/10/2012 | | 1,966.74 | | Payment | 07/01/2009 | 102,792.43 | -751.73 | 2,659.13 | | 417.54 | -358.20 | 564,525.34 | 0.00 | 0.00 | -9,475.10 | 135.84 |
| 10/15/2012 | 2,938.63 | | | Monthly payment | 07/01/2009 | 105,731.06 | | | | | | 564,525.34 | | | -9,475.10 | 135.84 |
| 10/17/2012 | | | 0.00 | Reversal | 07/01/2009 | 105,731.06 | 751.73 | -2,659.13 | | -417.54 | 358.20 | 563,773.61 | 0.00 | 0.00 | -9,892.64 | 135.84 |
| 10/17/2012 | | | 25.00 | Non-sufficient funds (NSF) fees | 07/01/2009 | 105,731.06 | | | | 25.00 | | 563,773.61 | 0.00 | 0.00 | -9,892.64 | 135.84 |
| 11/02/2012 | | 1,000.00 | | Payment | 07/01/2009 | 105,731.06 | 0.00 | 0.00 | | 0.00 | 1,000.00 | 563,773.61 | 0.00 | 0.00 | -8,892.64 | 160.84 |
| 11/02/2012 | | 966.74 | | Payment | 07/01/2009 | 105,731.06 | -751.73 | 2,659.13 | | 417.54 | -1,358.20 | 564,525.34 | 0.00 | 0.00 | -9,475.10 | 160.84 |
| 11/15/2012 | 2,938.63 | | | Monthly payment | 07/01/2009 | 108,669.69 | | | | | | 564,525.34 | | | -9,475.10 | 160.84 |
| 12/15/2012 | 2,938.63 | | | Monthly payment | 07/01/2009 | 111,608.32 | | | | | | 564,525.34 | | | -9,475.10 | 160.84 |
| 01/08/2013 | | | 811.00 | Hazard Insurance Disbursement | 07/01/2009 | 106,958.44 | 0.00 | 0.00 | | -811.00 | 0.00 | | 0.00 | 0.00 | -10,286.10 | 160.84 |
| 01/15/2013 | 2,938.63 | | | Monthly payment | 08/15/2009 | 109,897.07 | | | | | | 564,525.34 | | | -10,286.10 | 160.84 |
| 02/15/2013 | 2,938.63 | | | Monthly payment | 08/15/2009 | 112,835.70 | | | | | | 564,525.34 | | | -10,286.10 | 160.84 |

Case 2:17-bk-23881-WB    Doc ...    Filed 10/03/18 ...    Page 13 of ...
20

(12/15)

# Mortgage Proof of Claim Attachment: Additional Page

Case number: 1723881

Debtor 1: Benjamin Isaac Menjivar aka Benjamin I. Menjivar aka Benjamin Menjivar

## Part 5 : Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual Pmt due date | G. Contractual Pmt, int. & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 03/15/2013 | 2,938.63 | | | Monthly payment | 08/15/2009 | 115,774.33 | | | | | | 564,525.34 | | 0.00 | -10,286.10 | 160.84 |
| 04/15/2013 | 2,938.63 | | | Monthly payment | 08/15/2009 | 118,712.96 | | | | | | 564,525.34 | | 0.00 | -10,286.10 | 160.84 |
| 05/15/2013 | 2,938.63 | | | Monthly payment | 08/15/2009 | 121,651.59 | | | | | | 564,525.34 | | 0.00 | -10,286.10 | 160.84 |
| 06/15/2013 | 2,938.63 | | | Monthly payment | 08/15/2009 | 124,590.22 | | | | | | 564,525.34 | | 0.00 | -10,286.10 | 160.84 |
| 07/15/2013 | 2,938.63 | | | Monthly payment | 08/15/2009 | 127,528.85 | | | | | | 564,525.34 | | 0.00 | -10,286.10 | 160.84 |
| 08/15/2013 | 2,938.63 | | | Monthly payment | 08/15/2009 | 130,467.48 | | | | | | 564,525.34 | | 0.00 | -10,286.10 | 160.84 |
| 09/15/2013 | 3,129.67 | | | Monthly payment | 08/15/2009 | 133,697.15 | | | | | | 564,525.34 | | 0.00 | -10,286.10 | 160.84 |
| 10/15/2013 | 3,139.73 | | | Monthly payment | 08/15/2009 | 136,736.88 | | | | | | 564,525.34 | | 0.00 | -10,286.10 | 160.84 |
| 10/18/2013 | | | 0.00 | Payment | 08/15/2009 | 134,411.94 | -717.64 | 2,625.04 | | 417.54 | -2,324.94 | 565,242.98 | | 0.00 | -9,868.56 | 160.84 |
| 11/15/2013 | 3,139.73 | | | Monthly payment | 08/15/2009 | 137,551.67 | | | | | | 565,242.98 | | 0.00 | -9,868.56 | 160.84 |
| 12/15/2013 | 3,139.73 | | | Monthly payment | 08/15/2009 | 140,691.40 | | | | | | 565,242.98 | | 0.00 | -9,868.56 | 160.84 |
| 01/15/2014 | 3,139.73 | | | Monthly payment | 08/15/2009 | 143,831.13 | | | | | | 565,242.98 | | 0.00 | -9,868.56 | 160.84 |
| 01/24/2014 | | 7,271.71 | | Payment | 08/15/2009 | 143,831.13 | 0.00 | 0.00 | | 0.00 | 7,271.71 | 565,242.98 | | 0.00 | -9,868.56 | 160.84 |
| 02/15/2014 | 3,139.73 | | | Monthly payment | 08/15/2009 | 146,970.86 | | | | | | 565,242.98 | | 0.00 | -9,868.56 | 160.84 |
| 03/15/2014 | 3,139.73 | | | Monthly payment | 08/15/2009 | 150,110.59 | | | | | | 565,242.98 | | 0.00 | -9,868.56 | 160.84 |
| 04/15/2014 | 3,139.73 | | | Monthly payment | 08/15/2009 | 153,250.32 | | | | | | 565,242.98 | | 0.00 | -9,868.56 | 160.84 |
| 05/15/2014 | 3,139.73 | | | Monthly payment | 08/15/2009 | 156,390.05 | | | | | | 565,242.98 | | 0.00 | -9,868.56 | 160.84 |
| 05/15/2014 | | | 2,003.18 | County tax disbursement | 08/15/2009 | 156,390.05 | 0.00 | 0.00 | 0.00 | -2,003.18 | 0.00 | 565,242.98 | | 0.00 | -11,871.74 | 160.84 |
| 05/15/2014 | | | 2,003.17 | County tax disbursement | 08/15/2009 | 156,390.05 | 0.00 | 0.00 | 0.00 | -2,003.17 | 0.00 | 565,242.98 | | 0.00 | -13,674.91 | 160.84 |
| 05/16/2014 | | | 2,032.93 | County tax disbursement | 08/15/2009 | 156,390.05 | 0.00 | 0.00 | 0.00 | -2,032.93 | 0.00 | 565,242.98 | | 0.00 | -15,907.84 | 160.84 |
| 05/16/2014 | | | 2,032.93 | County tax disbursement | 08/15/2009 | 156,390.05 | 0.00 | 0.00 | 0.00 | -2,032.93 | 0.00 | 565,242.98 | | 0.00 | -17,940.77 | 160.84 |
| 06/09/2014 | | | 0.00 | Reversal | 08/15/2009 | 156,390.05 | 717.64 | -2,625.04 | | -417.54 | 2,324.94 | 564,525.34 | | 0.00 | -18,358.31 | 160.84 |

(12/15)

## Mortgage Proof of Claim Attachment: Additional Page

Case number: 1723881

Debtor 1: Benjamin Isaac Merjivar aka Benjamin I, Merjivar aka Benjamin Merjivar

### Part 5 : Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Contractual Prin, int, & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 06/09/2014 | | | 0.00 | Reversal | 09/15/2009 | 156,390.05 | 751.73 | -2,659.13 | | -417.54 | 2,324.94 | 563,773.51 | | 0.00 | -18,775.65 | 160.84 |
| 06/09/2014 | | | 0.00 | Reversal | 09/15/2009 | 156,390.05 | 766.88 | -2,674.28 | | -417.54 | 2,324.94 | 563,006.73 | | 0.00 | -19,193.39 | 160.84 |
| 06/09/2014 | | | 0.00 | Reversal | 09/15/2009 | 156,390.05 | 786.57 | -2,693.97 | | -417.54 | 2,324.94 | 562,220.16 | | 0.00 | -19,610.93 | 160.84 |
| 06/09/2014 | | | 0.00 | Reversal | 09/15/2009 | 156,390.05 | 0.00 | 0.00 | | 0.00 | 691.65 | 562,220.16 | | 0.00 | -19,610.93 | 1,052.49 |
| 06/09/2014 | | | 0.00 | Reversal | 09/15/2009 | 156,390.05 | 0.00 | 0.00 | | -1,960.87 | 1,960.87 | 562,220.16 | | 0.00 | -21,571.80 | 1,052.49 |
| 06/09/2014 | | | 0.00 | Reversal | 09/15/2009 | 156,390.05 | 782.82 | -2,690.22 | | -399.54 | 2,306.94 | 561,437.34 | | 0.00 | -21,971.34 | 1,052.49 |
| 06/09/2014 | | | 0.00 | Reversal | 09/15/2009 | 166,390.05 | 0.00 | 0.00 | | -1,164.77 | 1,154.77 | 561,437.34 | | 0.00 | -23,136.11 | 1,052.49 |
| 06/09/2014 | | | 0.00 | Reversal | 09/15/2009 | 156,390.05 | 820.93 | -2,728.33 | | -399.54 | 2,306.94 | 560,616.41 | | 0.00 | -23,535.65 | 1,052.49 |
| 06/15/2014 | 3,139.73 | | | Monthly payment | 09/15/2009 | 159,529.78 | 649.45 | -2,756.65 | | -399.54 | 2,306.94 | 559,766.96 | | 0.00 | -23,935.19 | 1,052.49 |
| 07/16/2014 | 3,139.73 | | | Monthly payment | 09/15/2009 | 162,669.51 | | | | | | 559,766.96 | | 0.00 | -23,935.19 | 1,052.49 |
| 08/07/2014 | | 0.00 | | Payment | 09/15/2009 | 176,619.15 | -848.45 | 2,756.85 | | 391.38 | -16,091.46 | 560,616.41 | | 0.00 | -23,543.81 | 1,052.49 |
| 08/07/2014 | | 0.00 | | Payment | 03/15/2009 | 174,294.21 | -820.93 | 2,728.33 | | 391.38 | 0.00 | 561,437.34 | | 0.00 | -23,152.43 | 1,052.49 |
| 08/07/2014 | | 0.00 | | Payment | 04/15/2009 | 171,969.27 | -782.82 | 2,690.22 | | 391.38 | 0.00 | 562,220.16 | | 0.00 | -22,761.05 | 1,052.49 |
| 08/07/2014 | | 0.00 | | Payment | 05/15/2009 | 169,644.33 | -786.57 | 2,693.97 | | 391.38 | 0.00 | 563,006.73 | | 0.00 | -22,369.67 | 1,052.49 |
| 08/07/2014 | | 0.00 | | Payment | 06/15/2009 | 167,319.39 | -766.88 | 2,674.28 | | 391.38 | 0.00 | 563,773.51 | | 0.00 | -21,978.29 | 1,052.49 |
| 08/07/2014 | | 0.00 | | Payment | 07/15/2009 | 164,994.45 | -751.73 | 2,659.13 | | 391.38 | 0.00 | 564,525.34 | | 0.00 | -21,586.91 | 1,052.49 |
| 08/07/2014 | | 0.00 | | Payment | 08/15/2009 | 162,669.51 | -717.64 | 2,625.04 | | 391.38 | 0.00 | 565,242.98 | | 0.00 | -21,195.53 | 1,052.49 |
| 08/08/2014 | | 0.00 | | Payment | 09/15/2009 | 160,344.57 | -476.01 | 2,529.46 | | 391.38 | -12,209.15 | 565,721.99 | | 0.00 | -20,804.15 | 1,052.49 |
| 08/08/2014 | | 0.00 | | Payment | 10/15/2009 | 158,019.63 | -434.01 | 2,484.46 | | 391.38 | 0.00 | 566,156.00 | | 0.00 | -20,412.77 | 1,052.49 |
| 08/08/2014 | | 0.00 | | Payment | 11/15/2009 | 155,694.69 | -351.00 | 2,401.45 | | 391.38 | 0.00 | 566,507.00 | | 0.00 | -20,021.39 | 1,052.49 |
| 08/08/2014 | | 0.00 | | Payment | 12/15/2009 | 153,369.75 | -291.11 | 2,341.56 | | 391.38 | 0.00 | 566,798.11 | | 0.00 | -19,630.01 | 1,052.49 |
| 08/08/2014 | | 0.00 | | Payment | 01/15/2010 | 151,044.81 | -98.66 | 2,149.11 | | 391.38 | 0.00 | 566,896.77 | | 0.00 | -19,238.63 | 1,052.49 |
| 08/13/2014 | | | 0.00 | Reversal | 02/15/2010 | 151,044.81 | 98.66 | -2,149.11 | | -391.38 | 2,441.83 | 566,798.11 | | 0.00 | -19,630.01 | 3,800.77 |

Official Form 410A    Mortgage Proof of Claim Attachment

(12/15)

# Mortgage Proof of Claim Attachment: Additional Page

Case number: 1722881

Debtor 1: Benjamin Isaac Manjivar aka Benjamin I, Manjivar aka Benjamin Manjivar

## Part 5 : Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual Prin, int, & due date | G. Contractual Prin, int, & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 08/13/2014 | | | 0.00 | Reversal | 02/15/2010 | 151,044.81 | 291.11 | -2,341.56 | -391.38 | | 2,441.83 | 566,507.00 | | 0.00 | -20,021.39 | 1,052.49 |
| 08/13/2014 | | | 0.00 | Reversal | 02/15/2010 | 151,044.81 | 351.00 | -2,401.45 | -391.38 | | 2,441.83 | 566,156.00 | | 0.00 | -20,412.77 | 1,052.49 |
| 08/13/2014 | | | 0.00 | Reversal | 02/15/2010 | 151,044.81 | 434.61 | -2,484.46 | -391.38 | | 2,441.83 | 565,721.99 | | 0.00 | -20,804.15 | 1,052.49 |
| 08/13/2014 | | | 0.00 | Reversal | 02/15/2010 | 151,044.81 | 479.01 | -2,529.46 | -391.38 | | 2,441.83 | 565,242.98 | | 0.00 | -21,195.53 | 1,052.49 |
| 08/15/2014 | 3,139.73 | | | Monthly payment | | | | | | | | 565,242.98 | | | -21,195.53 | 1,052.49 |
| 09/11/2014 | | | 0.00 | Reversal | 02/15/2010 | 154,184.54 | 717.64 | -2,625.04 | -391.38 | | 2,298.78 | 564,525.34 | | 0.00 | -21,586.91 | 1,052.49 |
| 09/11/2014 | | | 0.00 | Reversal | 02/15/2010 | 154,184.54 | 751.73 | -2,659.13 | -391.38 | | 2,298.78 | 563,773.61 | | 0.00 | -21,978.29 | 1,052.49 |
| 09/11/2014 | | | 0.00 | Reversal | 02/15/2010 | 154,184.54 | 766.88 | -2,674.28 | -391.38 | | 2,298.78 | 563,006.73 | | 0.00 | -22,369.67 | 1,052.49 |
| 09/11/2014 | | | 0.00 | Reversal | 02/15/2010 | 154,184.54 | 786.57 | -2,693.97 | -391.38 | | 2,298.78 | 562,220.16 | | 0.00 | -22,761.05 | 1,052.49 |
| 09/11/2014 | | | 0.00 | Reversal | 02/15/2010 | 154,184.54 | 782.82 | -2,690.22 | -391.38 | | 2,298.78 | 561,437.34 | | 0.00 | -23,152.43 | 1,052.49 |
| 09/11/2014 | | | 0.00 | Reversal | 02/15/2010 | 154,184.54 | 820.93 | -2,728.33 | -391.38 | | 2,298.78 | 560,616.41 | | 0.00 | -23,543.43 | 1,052.49 |
| 09/11/2014 | | | 0.00 | Reversal | 02/15/2010 | 154,184.54 | 849.45 | -2,756.85 | -391.38 | | 2,298.78 | 559,766.96 | | 0.00 | -23,935.19 | 1,052.49 |
| 09/11/2014 | | 0.00 | | Payment | 02/15/2010 | 179,758.88 | -849.45 | 2,756.85 | 391.38 | | -16,091.46 | 560,616.41 | | 0.00 | -23,543.81 | 1,052.49 |
| 09/11/2014 | | 0.00 | | Payment | 03/15/2009 | 163,484.30 | -479.01 | 2,529.46 | 391.38 | | -12,209.15 | 561,095.42 | | 0.00 | -23,152.43 | 1,052.49 |
| 09/11/2014 | | 0.00 | | Payment | 10/15/2009 | 177,433.94 | -820.93 | 2,728.33 | 391.38 | | 0.00 | 561,916.35 | | 0.00 | -22,761.05 | 1,052.49 |
| 09/11/2014 | | 0.00 | | Payment | 04/15/2009 | 161,159.36 | -434.01 | 2,484.46 | 391.38 | | 0.00 | 562,350.36 | | 0.00 | -22,369.67 | 1,052.49 |
| 09/11/2014 | | 0.00 | | Payment | 11/15/2009 | 175,109.00 | -782.82 | 2,690.22 | 391.38 | | 0.00 | 563,133.18 | | 0.00 | -21,978.29 | 1,052.49 |
| 09/11/2014 | | 0.00 | | Payment | 05/15/2009 | 158,834.42 | -351.00 | 2,401.45 | 391.38 | | 0.00 | 563,484.18 | | 0.00 | -21,586.91 | 1,052.49 |
| 09/11/2014 | | 0.00 | | Payment | 12/15/2009 | 172,784.06 | -786.57 | 2,693.97 | 391.38 | | 0.00 | 564,270.75 | | 0.00 | -21,195.53 | 1,052.49 |
| 09/11/2014 | | 0.00 | | Payment | 06/15/2009 | 156,509.48 | -291.11 | 2,341.56 | 391.38 | | 0.00 | 564,561.86 | | 0.00 | -20,804.15 | 1,052.49 |
| 09/11/2014 | | 0.00 | | Payment | 01/15/2010 | 170,459.12 | -766.88 | 2,674.28 | 391.38 | | 0.00 | 565,328.74 | | 0.00 | -20,412.77 | 1,052.49 |
| 09/11/2014 | | 0.00 | | Payment | 07/15/2009 | 154,184.54 | -98.66 | 2,149.11 | 391.38 | | 0.00 | 565,427.40 | | 0.00 | -20,021.39 | 1,052.49 |
| 09/11/2014 | | 0.00 | | Payment | 02/15/2010 | 168,134.18 | -751.73 | 2,659.13 | 391.38 | | 0.00 | 566,179.13 | | 0.00 | -19,630.01 | 1,052.49 |
| 09/11/2014 | | 0.00 | | Payment | 08/15/2009 | 165,809.24 | -717.64 | 2,625.04 | 391.38 | | 0.00 | 566,896.77 | | 0.00 | -19,238.63 | 1,052.49 |

Case 2:17-bk-23881-WB    Doc 1102    Main Document    Page 20... (1 of) Pages

(12/15)

## Mortgage Proof of Claim Attachment: Additional Page

Case number: 1723881

Debtor 1: Benjamin Isaac Menjivar aka Benjamin I. Menjivar aka Benjamin Menjivar

### Part 5 : Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual Prin, int & due date | G. Contractual Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 09/15/2014 | 3,109.81 | | | Monthly payment | 09/15/2009 | 168,919.05 | | | | | | 566,896.77 | | 0.00 | -19,238.63 | 1,052.49 |
| 10/15/2014 | 3,109.81 | | | Monthly payment | 08/15/2009 | 172,028.86 | | | | | | 566,896.77 | | 0.00 | -19,238.63 | 1,052.49 |
| 10/24/2014 | | -1,052.49 | | Late Charge | 08/15/2009 | 172,028.86 | | | | -1,052.49 | | 566,896.77 | | 0.00 | -19,238.63 | 0.00 |
| 11/15/2014 | 3,109.81 | | | Monthly payment | 09/15/2009 | 175,138.67 | | | | | | 566,896.77 | | 0.00 | -19,238.63 | 0.00 |
| 11/21/2014 | | | 2,034.68 | County tax disbursement | 09/15/2009 | 163,513.97 | 0.00 | 0.00 | -2,034.68 | | 0.00 | 566,896.77 | | 0.00 | -21,273.31 | 0.00 |
| 12/09/2014 | | | 873.00 | Hazard Insurance Disbursement | 02/15/2010 | 163,513.97 | 0.00 | 0.00 | -873.00 | | 0.00 | 566,896.77 | | 0.00 | -22,146.31 | 0.00 |
| 12/15/2014 | 3,117.27 | | | Monthly payment | 02/15/2010 | 166,631.24 | | | | | | 566,896.77 | | 0.00 | -22,146.31 | 0.00 |
| 01/15/2015 | 3,117.27 | | | Monthly payment | 02/15/2010 | 169,748.51 | | | | | | 566,896.77 | | 0.00 | -22,146.31 | 0.00 |
| 02/11/2015 | | 25.00 | | Payment | 02/15/2010 | 169,748.51 | 0.00 | | | 0.00 | | 566,896.77 | | 0.00 | -22,146.31 | 15.00 |
| 02/11/2015 | | | 15.00 | Undefined Fee Category | 02/15/2010 | 169,748.51 | | | | 15.00 | | 566,896.77 | | 0.00 | -22,146.31 | 15.00 |
| 02/11/2015 | | | 10.00 | Property inspection fees | 02/15/2010 | 169,748.51 | | | | 10.00 | | 566,896.77 | 25.00 | 0.00 | -22,146.31 | 25.00 |
| 02/15/2015 | 3,117.27 | | | Monthly payment | 02/15/2010 | 172,865.78 | | | | | | 566,896.77 | | 0.00 | -22,146.31 | 25.00 |
| 03/15/2015 | 3,117.27 | | | Monthly payment | 02/15/2010 | 175,983.05 | | | | | | 566,896.77 | | 0.00 | -22,146.31 | 25.00 |
| 03/26/2015 | | | 2,034.68 | County tax disbursement | 02/15/2010 | 175,983.05 | 0.00 | 0.00 | -2,034.68 | | 0.00 | 566,896.77 | | 0.00 | -24,180.99 | 25.00 |
| 04/15/2015 | 3,117.27 | | | Monthly payment | 02/15/2010 | 179,100.32 | | | | | | 566,896.77 | | 0.00 | -24,180.99 | 25.00 |
| 05/06/2015 | | -25.00 | | Non-sufficient funds (NSF) fees | 02/15/2010 | 179,100.32 | | | | -25.00 | | 566,896.77 | | 0.00 | -24,180.99 | 0.00 |
| 05/15/2015 | 3,120.23 | | | Monthly payment | 02/15/2010 | 182,220.55 | | | | | | 566,896.77 | | 0.00 | -24,180.99 | 0.00 |
| 06/15/2015 | 3,120.23 | | | Monthly payment | 02/15/2010 | 185,340.78 | | | | | | 566,896.77 | | 0.00 | -24,180.99 | 0.00 |
| 07/15/2015 | 3,120.23 | | | Monthly payment | 02/15/2010 | 188,461.01 | | | | | | 566,896.77 | | 0.00 | -24,180.99 | 0.00 |
| 08/15/2015 | 3,120.23 | | | Monthly payment | 02/15/2010 | 191,581.24 | | | | | | 566,896.77 | | 0.00 | -24,180.99 | 0.00 |
| 09/15/2015 | 3,051.43 | | | Monthly payment | 02/15/2010 | 194,632.67 | | | | | | 566,896.77 | | 0.00 | -24,180.99 | 0.00 |

Official Form 410A    Mortgage Proof of Claim Attachment    page 13 of 15

(12/15)

## Mortgage Proof of Claim Attachment: Additional Page

Case number: 1723881

Debtor 1: Benjamin Isaac Menjivar aka Benjamin I, Menjivar aka Benjamin Menjivar

### Part 5 : Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual Prin, int & due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/15/2015 | 3,051.43 | 3,051.43 | | Monthly payment | 02/15/2010 | 197,684.10 | | | | | | 566,896.77 | 566,896.77 | 0.00 | -24,180.99 | 0.00 |
| 11/15/2015 | 3,051.43 | 3,051.43 | | Monthly payment | 02/15/2010 | 200,735.53 | | | | | | 566,896.77 | 566,896.77 | 0.00 | -24,180.99 | 0.00 |
| 11/23/2015 | | | 2,059.13 | County tax disbursement | 02/15/2010 | 200,735.53 | 0.00 | | 0.00 | -2,059.13 | | 566,896.77 | 566,896.77 | 0.00 | -26,240.12 | 0.00 |
| 11/23/2015 | | | 125.00 | Advertisement costs | 02/15/2010 | 200,735.53 | | | | | 125.00 | 566,896.77 | 566,896.77 | 0.00 | -26,240.12 | 125.00 |
| 12/10/2015 | | | 348.75 | Advertisement costs | 02/15/2010 | 200,735.53 | | | | | 348.75 | 566,896.77 | 566,896.77 | 0.00 | -26,240.12 | 125.00 |
| 12/15/2015 | 3,051.43 | | | Monthly payment | 02/15/2010 | 203,786.96 | | | | | | 566,896.77 | 566,896.77 | 0.00 | -26,240.12 | 473.75 |
| 12/31/2015 | | | 899.00 | Hazard Insurance Disbursement | 02/15/2010 | 203,786.96 | 0.00 | | 0.00 | -899.00 | | 566,896.77 | 566,896.77 | 0.00 | -27,139.12 | 473.75 |
| 01/04/2016 | | | 131.98 | Late Charge | 02/15/2010 | 203,786.96 | | | | | 131.98 | 566,896.77 | 566,896.77 | 0.00 | -27,139.12 | 605.73 |
| 01/05/2016 | | | -131.98 | Late Charge | 02/15/2010 | 203,786.96 | | | | | -131.98 | 566,896.77 | 566,896.77 | 0.00 | -27,139.12 | 473.75 |
| 01/15/2016 | 3,051.43 | | | Monthly payment | 02/15/2010 | 206,838.39 | | | | | | 566,896.77 | 566,896.77 | 0.00 | -27,139.12 | 473.75 |
| 02/15/2016 | 3,051.43 | | | Monthly payment | 02/15/2010 | 209,889.82 | | | | | | 566,896.77 | 566,896.77 | 0.00 | -27,139.12 | 473.75 |
| 02/15/2016 | 3,051.43 | | | Monthly payment | 02/15/2010 | 212,941.25 | | | | | | 566,896.77 | 566,896.77 | 0.00 | -27,139.12 | 473.75 |
| 04/15/2016 | 3,057.68 | | | Monthly payment | 02/15/2010 | 215,988.93 | | | | | | 566,896.77 | 566,896.77 | 0.00 | -27,139.12 | 473.75 |
| 05/15/2016 | 3,057.68 | | | Monthly payment | 02/15/2010 | 219,056.61 | | | | | | 566,896.77 | 566,896.77 | 0.00 | -27,139.12 | 473.75 |
| 06/09/2016 | | 1,966.74 | | Payment | 02/15/2010 | 219,056.61 | 0.00 | 0.00 | 0.00 | 0.00 | 1,966.74 | 566,896.77 | 566,896.77 | 0.00 | -27,139.12 | 473.75 |
| 06/09/2016 | | 672.83 | | Payment | 02/15/2010 | 219,056.61 | 0.00 | 0.00 | 0.00 | 0.00 | 672.83 | 566,896.77 | 566,896.77 | 0.00 | -27,139.12 | 473.75 |
| 06/15/2016 | 3,057.68 | | | Monthly payment | 02/15/2010 | 222,114.29 | | | | | | 566,896.77 | 566,896.77 | 0.00 | -27,139.12 | 473.75 |
| 07/15/2016 | 3,057.68 | | | Monthly payment | 02/15/2010 | 225,171.97 | | | | | | 566,896.77 | 566,896.77 | 0.00 | -27,139.12 | 473.75 |
| 08/15/2016 | 3,057.68 | | | Monthly payment | 02/15/2010 | 228,229.65 | | | | | | 566,896.77 | 566,896.77 | 0.00 | -27,139.12 | 473.75 |
| 09/15/2016 | 2,979.01 | | | Monthly payment | 02/15/2010 | 231,209.66 | | | | | | 566,896.77 | 566,896.77 | 0.00 | -27,139.12 | 473.75 |
| 10/15/2016 | 2,979.01 | | | Monthly payment | 02/15/2010 | 234,187.67 | | | | | | 566,896.77 | 566,896.77 | 0.00 | -27,139.12 | 473.75 |
| 11/15/2016 | 2,979.01 | | | Monthly payment | 02/15/2010 | 237,186.68 | | | | | | 566,896.77 | 566,896.77 | 0.00 | -27,139.12 | 473.75 |
| 12/15/2016 | 2,979.01 | | | Monthly payment | 02/15/2010 | 240,145.89 | | | | | | 566,896.77 | 566,896.77 | 0.00 | -27,139.12 | 473.75 |

(12/15)

# Mortgage Proof of Claim Attachment: Additional Page

Case number: 1723881

Debtor 1: Benjamin Isaac Menjivar aka Benjamin I. Menjivar aka Benjamin Menjivar

## Part 5 : Loan Payment History from First Date of Default

| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | | L. | M. | N. | O. | P. | Q. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | | Balance After Amount Received or Incurred | | | | |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual Prin. & due date | Contractual Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 12/29/2016 | | | 923.00 | Hazard Insurance Disbursement | 02/15/2010 | 240,145.69 | 0.00 | 0.00 | -928.00 | | | | 0.00 | 566,896.77 | 0.00 | -28,068.12 | 473.75 |
| 01/15/2017 | 2,979.01 | | | Monthly payment | 02/15/2010 | 243,124.70 | | | | | | | 566,896.77 | 0.00 | -28,068.12 | 473.75 |
| 02/15/2017 | 2,979.01 | | | Monthly payment | 02/15/2010 | 246,103.71 | | | | | | | 566,896.77 | 0.00 | -28,068.12 | 473.75 |
| 03/15/2017 | 2,979.01 | | | Monthly payment | 02/15/2010 | 249,082.72 | | | | | | | 566,896.77 | 0.00 | -28,068.12 | 473.75 |
| 04/15/2017 | 2,984.14 | | | Monthly payment | 02/15/2010 | 252,066.86 | | | | | | | 566,896.77 | 0.00 | -28,068.12 | 473.75 |
| 05/15/2017 | 2,984.14 | | | Monthly payment | 02/15/2010 | 255,051.00 | | | | | | | 566,896.77 | 0.00 | -28,068.12 | 473.75 |
| 06/15/2017 | 2,984.14 | | | Monthly payment | 02/15/2010 | 258,035.14 | | | | | | | 566,896.77 | 0.00 | -28,068.12 | 473.75 |
| 07/15/2017 | 2,984.14 | | | Monthly payment | 02/15/2010 | 261,019.28 | | | | | | | 566,896.77 | 0.00 | -28,068.12 | 473.75 |
| 08/15/2017 | 2,984.14 | | | Monthly payment | 02/15/2010 | 264,003.42 | | | | | | | 566,896.77 | 0.00 | -28,068.12 | 473.75 |
| 09/15/2017 | 2,966.22 | | | Monthly payment | 02/15/2010 | 266,969.64 | | | | | | | 566,896.77 | 0.00 | -28,068.12 | 473.75 |
| 10/12/2017 | | | 120.00 | Advertisement costs | 02/15/2010 | 266,969.64 | | | | | 120.00 | | 566,896.77 | 0.00 | -28,068.12 | 593.75 |
| 10/15/2017 | 2,966.22 | | | Monthly payment | 02/15/2010 | 269,935.86 | | | | | | | 566,896.77 | 0.00 | -28,068.12 | 593.75 |
| 11/07/2017 | | | -120.00 | Advertisement costs | 02/15/2010 | 269,935.86 | | | | | -120.00 | | 566,896.77 | 0.00 | -28,068.12 | 473.75 |
| 11/08/2017 | | 0.00 | | Payment | 02/15/2010 | 267,610.92 | -75.41 | 2,135.86 | 0.00 | 589.12 | | -2,639.57 | 566,972.18 | 0.00 | -27,479.00 | 473.75 |
| 11/09/2017 | | | | Bankruptcy Filed | 03/15/2010 | 267,610.92 | | | | | | | 566,972.18 | 0.00 | -27,479.00 | 473.75 |

## Addendum Page

Basis for asserting that the applicable party has the right to foreclose: Debtor(s) executed a promissory note secured by a mortgage, deed of trust, or security deed. The Promissory note is either made payable to creditor or has been duly indorsed. Creditor, directly or through an agent, has possession of the promissory note. Creditor is the original mortgagee or beneficiary or the assignee of the mortgage, deed of trust, or security deed.

### Additional Disclaimers (where applicable)

#### 410

**Part 2:** Question 9-Describe contains the property address and may contain a description for "Other".

#### 410A

**Part 1:**

Full creditor name cannot be displayed due to space limitation, see 410 part 1.1 for full name.

**Part 2:**

Principal Balance is from Part 5, Column M as of the Bankruptcy File Date.

Interest Due is the interest due as of the Bankruptcy File Date.

Fees, costs due is from Part 5, Column P as of the Bankruptcy File Date and includes any outstanding fees (i.e. late charges, property inspections) and cost (i.e. attorney costs), also included are corporate advances (i.e. tax, insurance) for non-escrowed loans as of the Bankruptcy File Date. Any fees, costs due that are incurred pre-petition and waived post-petition will not be included.

Escrow deficiency for funds advanced is from Part 5, Column O (if negative balance) as of the Bankruptcy File Date.

Other includes any applicable Private Mortgage Insurance, other Optional Products (i.e. A & H, Life) or Deferred Interest, where applicable, due as of the Bankruptcy File Date. This line was added to ensure transparency.

Less Total Funds on hand is the total of Part 5, Column O (if positive balance) and Q as of the Bankruptcy File Date.

Total Debt not to be used for payoff purposes.

**Part 3:**

Principal and Interest is the principal and interest portion of Part 5, Column G, as of the Bankruptcy File Date. (If post-petition payments are included as required by Local Rule or practice, this field will include post-petition principal and interest amounts).

Pre-Petition Fees Due is from Part 5, Column P as of the Bankruptcy File Date. Any fees, costs due that are incurred pre-petition and waived post-petition will not be included.

Escrow Deficiency for Funds Advanced is from Part 5, Column O (if negative balance) as of the Bankruptcy File Date.

Projected Escrow Shortage is the Escrow Required from the escrow analysis minus a positive escrow balance as of the Bankruptcy File Date. (If post-petition payments are included as required by Local Rule or practice, this field will include post-petition escrow amounts).

Other includes any applicable Optional Products (i.e. A & H, Life) due as of the bankruptcy file date. This line was added to ensure transparency. (If post-petition payments are included as required by Local Rule or practice, this field will include post-petition Optional Product amounts).

Less Funds on Hand is from Part 5, column Q as of the Bankruptcy File Date.

**Part 4:**

Optional Products includes any applicable optional products (i.e. A & H, Life) due as of the Bankruptcy File Date. This line was added to ensure transparency.

(*)This disclaimer has been added to the form to explain that the monthly payment amount may change periodically throughout the life of the loan.

**Part 5:**

If any of the transactions in the loan payment history contain amounts for optional products, the amount for that product will be reflected in either the Contractual payment amount or the Funds Received amount, and will be applied in those amounts. It will also be reflected in column G as described below.

Column G In addition to the items listed, this also includes any past due PMI or optional products (i.e. A & H, Life) amounts, as applicable. Optional product (i.e. A & H, Life) amounts will not be included in columns H-Q due to no appropriate column heading for this type of transaction.

Column J includes taxes, insurance and MIP/PMI as applicable.

Column N will only be populated if the loan is Daily Simple Interest or if Deferred Interest exists on the account.

Column O includes taxes, insurance and MIP/PMI as applicable.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

Wells Fargo Bank, N.A.
Default Document Processing MAC #N9286-01Y
1000 Blue Gentian Road
Eagan, MN 55121-7700

A true and correct copy of the foregoing document entitled (*specify*):  Proof of Claim will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) January 21 2018 , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**Trustee:**
**Debtor's Attorney:** go@gobklaw.com
**U.S Trustee:** alvin.mar@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served):**  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**Debtor Attorney:**
Orantes Law Firm PC
Attn: Giovanni Orantes
3435 Wilshire Blvd Ste 2920
Los Angeles, CA 90010

**Trustee:**
Alvin Mar  (TR)
915 Wilshire Boulevard, Ste 1850
Los Angeles, CA 90017

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 1/2/2018 | Judi M Upchurch | /s/ Judi M Upchurch |
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**WELLS FARGO HOME MORTGAGE**

Return Mail Operations
PO Box 14547
Des Moines, IA 50306-4547

*For informational purposes only*

**Statement Date:** November 17, 2017
**Loan number:**
**Property address:**
1129 S 2ND ST
ALHAMBRA CA 91801-4722

BENJAMIN MENJIVAR
SARA MENJIVAR
1129 S 2ND ST
ALHAMBRA CA 91801-4722

### Customer Service

**Online** 
wellsfargo.com

**Correspondence**
PO Box 10335
Des Moines, IA 50306

**To learn more, go to:**
wellsfargo.com/escrow

**Telephone**
1-800-340-0473

**Hours of operation**
Mon - Fri 7 a.m. - 7 p.m. CT

We accept telecommunications relay service calls

*PLEASE NOTE: If you are presently seeking relief (or have previously been granted relief) under the United States Bankruptcy Code, this statement is being sent to you for informational purposes only.*

Because the amounts billed for the escrow items can change over time, we review the escrow account to ensure there will be enough money to make these payments. Once the review is complete, we send the escrow review statement, also known as the escrow account disclosure statement.

Here's what we found:

- **Required minimum balance:** The escrow account balance is projected to be above the required minimum balance. This means there is an **overage.**

- **Future payments:** Based on what we expect to pay, as of November 15, 2017, the escrow portion of the payment will **increase.**

> The escrow account has an overage of
> **$6,454.84**

## Part 1 - Mortgage payment

**New Payment**   The new total payment will be $2,981.65

| | Current payment‡ | New payment |
|---|---|---|
| Principal and/or interest | $2,050.45 | $2,542.98 |
| Escrow payment | $391.38 | $438.67 |
| Total payment amount | $2,441.83 | $2,981.65 |

**No action required**

Starting **November 15, 2017** the new contractual payment amount will be **$2,981.65**

‡**Current payment** represents the next contractual payment on this loan.

**Note:** If this is an adjustable rate mortgage (ARM), a separate notice will be sent before the payment is scheduled to change.

See Page 2 for additional details.

Case 2:17-bk-23881-WB    Claim 1 Part 2    Filed 01/02/18    Desc Exhibit Loan Page 2 of 33    Page 2 of 3

## Part 2 - Payment calculations

For the coming year, we expect the amount paid from escrow to be $5,263.97.

### How was the escrow payment calculated?

To determine the escrow payment, we add the projected escrow items to be paid over the next 12 months. We base these projected amounts on any escrow items that may have been paid in the past and any future anticipated payments to be made. We then divide the total amount by 12 payments to determine the escrow amount.

The chart below includes any actual escrow disbursements as well as any shortage that may have been identified for the past three analysis periods.

### Escrow comparison

|  | 04/16 - 04/17 (Actual) | 12/16 - 12/17 (Actual) | 04/17 - 11/17 (Actual) | 11/17 - 10/18 (Projected) | | # of months | | New monthly escrow amount |
|---|---|---|---|---|---|---|---|---|
| **Property taxes** | $0.00 | $0.00 | $0.00 | $4,334.97 | ÷ | 12 | = | $361.25 |
| **Property insurance** | $929.00 | $929.00 | $0.00 | $929.00 | ÷ | 12 | = | $77.42 |
| **Total taxes and insurance** | $929.00 | $929.00 | $0.00 | $5,263.97 | ÷ | 12 | = | $438.67 |
| **Total escrow** | $929.00 | $929.00 | $0.00 | $5,263.97 | | | | $438.67 |

### Projected escrow account activity over the next 12 months

To determine if there will be a shortage or overage in the account, we calculate whether the amount of the lowest projected escrow balance will be greater or less than the required minimum balance. This is determined by subtracting the required minimum balance from the lowest projected balance. If the outcome is positive, there is an overage. If it is negative, there is a shortage. The calculation is below:

| Lowest projected escrow balance  March, 2018 | $6,454.84 | (Calculated in Part 3 - Escrow account projections table) |
|---|---|---|
| Minimum balance for the escrow account  − | $0.00 | |
| **Escrow overage  =** | **$6,454.84** | |

## Important messages

Case 2:17-bk-23881-WB    Claim 3 Part 2    Filed 01/02/18    Desc Exhibit    Page 3 of 33    Page 3 of 3

Loan Number:

## Part 3 - Escrow account projections

Escrow account projections from November, 2017 to October, 2018

| Date | Payments to escrow | What we expect to pay out | Description | Projected escrow balance | Balance required in the account |
|---|---|---|---|---|---|
| Oct 2017 | | | Starting balance | $9,525.46 | $3,070.62 |
| Nov 2017 | $438.67 | $2,244.28 | LOS ANGELES COUNTY (W) | $7,719.85 | $1,265.01 |
| Dec 2017 | $438.67 | $0.00 | | $8,158.52 | $1,703.68 |
| Jan 2018 | $438.67 | $929.00 | CALIFORNIA FAIR PLAN ASN | $7,668.19 | $1,213.35 |
| Feb 2018 | $438.67 | $0.00 | | $8,106.86 | $1,652.02 |
| Mar 2018 | $438.67 | $2,090.69 | LOS ANGELES COUNTY (W) | $6,454.84 | $0.00 |
| Apr 2018 | $438.67 | $0.00 | | $6,893.51 | $438.67 |
| May 2018 | $438.67 | $0.00 | | $7,332.18 | $877.34 |
| Jun 2018 | $438.67 | $0.00 | | $7,770.85 | $1,316.01 |
| Jul 2018 | $438.67 | $0.00 | | $8,209.52 | $1,754.68 |
| Aug 2018 | $438.67 | $0.00 | | $8,648.19 | $2,193.35 |
| Sep 2018 | $438.67 | $0.00 | | $9,086.86 | $2,632.02 |
| Oct 2018 | $438.67 | $0.00 | | $9,525.53 | $3,070.69 |
| Totals | $5,264.04 | $5,263.97 | | | |

## Part 4 - Escrow account history

Escrow account activity from April, 2017 to October, 2017

| Date | Deposits to escrow | | | Payments from escrow | | | Description | Escrow balance | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Actual | Projected | Difference | Actual | Projected | Difference | | Actual | Projected | Difference |
| Apr 2017 | | | | | | | Starting Balance | -$28,068.12 | -$0.06 | -$28,068.0 |
| Apr 2017 | $0.00 | $423.24 | -$423.24 | $0.00 | $0.00 | $0.00 | | -$28,068.12 | $423.18 | -$28,491.30 |
| May 2017 | $0.00 | $423.24 | -$423.24 | $0.00 | $0.00 | $0.00 | | -$28,068.12 | $846.42 | -$28,914.54 |
| Jun 2017 | $0.00 | $423.24 | -$423.24 | $0.00 | $0.00 | $0.00 | | -$28,068.12 | $1,269.66 | -$29,337.78 |
| Jul 2017 | $0.00 | $423.24 | -$423.24 | $0.00 | $0.00 | $0.00 | | -$28,068.12 | $1,692.90 | -$29,761.02 |
| Aug 2017 | $0.00 | $423.24 | -$423.24 | $0.00 | $0.00 | $0.00 | | -$28,068.12 | $2,116.14 | -$30,184.26 |
| Sep 2017 | $0.00 | $423.24 | -$423.24 | $0.00 | $0.00 | $0.00 | | -$28,068.12 | $2,539.38 | -$30,607.50 |
| Oct 2017 | $0.00 | $423.24 | -$423.24 | $0.00 | $0.00 | $0.00 | | -$28,068.12 | $2,962.62 | -$31,030.74 |
| Totals | $0.00 | $2,962.68 | -$2,962.68 | $0.00 | $0.00 | $0.00 | | | | |

*Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. ©2016 Wells Fargo Bank, N.A. All rights reserved.*
*NMLSR ID 399801  9/16*

LENDER

**WELLS FARGO HOME MORTGAGE**

Wells Fargo Home Mortgage
One Home Campus
Des Moines, IA 50328-0001

Loan number:

| Transaction Description | Date Applied | Escrow Disbursement(s): | Escrow Receipt(s): | Escrow Account Balance |
|---|---|---|---|---|
| Account History Range | 11/09/16 - 11/09/17 | | | |
| Starting Balance | 10/6/2016 | | | ($27,139.12) |
| Hazard Insurance | 12/29/2016 | ($929.00) | | ($28,068.12) |
| Payment | 11/8/2017 | | $589.12 | ($27,479.00) |
| Ending Totals/Balances | | ($929.00) | $589.12 | ($27,479.00) |
| Bankruptcy filed | 11/9/2017 | | | |



**Office of Thrift Supervision**
Department of the Treasury

*Nicholas J. Dyer*
*Assistant Regional Director*

Pacific Plaza, 2001 Junipero Serra Boulevard, Suite 650, Daly City, CA 94014-1976
P.O. Box 7165, San Francisco, CA 94120-7165 • Telephone: (650) 746-7025 • Fax: (650) 746-7001

November 19, 2007

John A. Stoker, Esq.
Vice President and Assistant General Counsel
Wachovia Corporation
Legal Division – NC0630
One Wachovia Center
301 South Charlotte Street
Charlotte, NC 28288

Re:  World Savings Bank, FSB, Oakland, California
     Notice of Amendment of Charter and Bylaws

Dear Mr. Stoker:

This is in response to your letter, dated November 8, 2007, with enclosures, which you filed with the Office of Thrift Supervision (OTS) on behalf of World Savings Bank, FSB to amend the savings bank's charter and bylaws to change its name to Wachovia Mortgage, FSB and reflect a change in the location of its home office.  The new home office address is 6825 Aliante Parkway, North Las Vegas, Nevada.

The institution met the requirements of 12 C.F.R. §§ 552.4(b) and 552.5(b)(2), and the proposed amendments will be effective December 31, 2007, as set forth in the Board of Directors' resolution adopting the changes to the charter and bylaws.  The filing also met the requirement of 12 C.F.R. § 545.91(b) that the savings bank notify the OTS if there is a change in the permanent address of its home office.

Please feel free to contact me at (650) 746-7025 if there are any questions.

Sincerely,

*Nicholas J. Dyer*

Nicholas J. Dyer
Assistant Regional Director

cc:  Robert Burns, FDIC - Atlanta

# EXHIBIT "A"

January 2, 2008

## ATTENTION

Re: Amendment of World Savings Bank, FSB's charter to change its name

As you know, on October 1, 2006, Golden West Financial Corporation, parent company of World Savings Bank, FSB ("World"), merged with Wachovia Corporation. Since October 1, 2006, the two institutions have undergone several integration procedures, one of which has been an amendment of World's charter to reflect a name amendment. Effective December 31, 2007, World Savings Bank, FSB became known as **Wachovia Mortgage, FSB.**

The charter amendment and/or name change may affect various matters relating to mortgage loans for which you have been retained. Accordingly, this letter is intended to provide guidance in your efforts to represent Wachovia Mortgage, FSB in those loan related matters. Subject to particular state or local rules, the name change should not require any special pleadings. All pleadings or documents prepared subsequent to December 30, 2007 both in furtherance of any outstanding legal matter or new matter in which the underlying documents reflect World, should set forth a statement of the charter amendment and refer to the surviving entity as, **"World Savings Bank, FSB, now known as Wachovia Mortgage, FSB"** or **"Wachovia Mortgage, FSB formerly known as World Savings Bank, FSB"**. Should you need a Secretary's Affidavit please contact me.

Should you determine that your jurisdiction requires some other pleading or notice other than as set forth above, which would generate additional attorney fees or costs, please contact me before proceeding forward.

Sincerely,

Kristi Garcia
Assistant General Counsel, Wachovia Corp.
on behalf of Wachovia Mortgage, FSB, its subsidiary
4101 Wiseman Blvd., MC TX1621
San Antonio, TX 78250
tel. 210-543-5747  fax 210-543-3015
kristi.garcia@wachovia.com



Comptroller of the Currency
Administrator of National Banks

Large Bank Licensing

November 1, 2009

Mr. James E. Hanson
Vice President
Wells Fargo Bank, National Association
90 South Seventh Street
Minneapolis, MN 55479

Re:    Application to convert Wachovia Mortgage, FSB, North Las Vegas, Nevada to a national
       bank and application to merge the converted bank with and into Wells Fargo Bank,
       National Association, Sioux Falls, South Dakota
       Application Control Numbers:  2009-ML-01-0007 and 2009-ML-02-0010

Dear Mr. Hanson:

This letter is the official certification of the Comptroller of the Currency (OCC) of the
conversion of Wachovia Mortgage FSB, North Las Vegas, Nevada to a national bank with the
name Wells Fargo Bank Southwest, National Association, effective November 1, 2009.  This is
also the official certification to merge Wells Fargo Bank Southwest, National Association with
and into Wells Fargo Bank, National Association, Sioux Falls, South Dakota, effective
November 1, 2009.

If you have questions regarding this letter, please contact me at (202) 874-5294 or by email at:
Stephen.Lybarger@occ.treas.gov .  Please reference the application control number or numbers
in any correspondence.

Sincerely,

Stephen A. Lybarger

Stephen A. Lybarger
Large Bank Licensing Lead Expert

1  of  6)

WORLD SAVINGS BANK, FSB

# ADJUSTABLE RATE MORTGAGE NOTE

## PICK-A-PAYMENT[sm] LOAN

### WACHOVIA AVERAGE DEPOSIT ACCOUNT RATE (COST OF SAVINGS) INDEX

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, MY MONTHLY PAYMENT
AND MY UNPAID PRINCIPAL BALANCE. MY MONTHLY PAYMENT INCREASES, MY INTEREST RATE INCREASES
AND MY PRINCIPAL BALANCE INCREASES ARE LIMITED. THIS NOTE IS SECURED BY A SECURITY INSTRUMENT
OF THE SAME DATE.

LOAN NUMBER-                                          DATE  July 9, 2007

BORROWER(S)  BENJAMIN MENJIVAR AND SARA MENJIVAR, HUSBAND AND WIFE   sometimes called
"Borrower" and sometimes simply called "I" or "me "

PROPERTY ADDRESS  1129 S 2ND ST, ALHAMBRA, CA  91801-4722

### 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U S  $551,650.00 , called "Principal," plus interest, and any other
charges incurred during the course of the loan, to the order of the Lender  The Lender is WORLD SAVINGS BANK, FSB,
a FEDERAL SAVINGS BANK, ITS SUCCESSORS AND/OR ASSIGNEES, or anyone to whom this Note is transferred.

### 2.  INTEREST

#### (A)  Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid  I will pay interest at the yearly
rate of 7.050%  The interest rate I will pay  may change as described in this Section 2  Interest will be charged on the basis of a
twelve month year and a thirty day month

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of
this Note

#### (B)  Interest Change Dates

The interest rate I will pay may change on the 15th day of September, 2007 and on the same day every month
thereafter  Each date on which my interest rate could change is called an "Interest Change Date "  The new rate of interest will
become effective on each Interest Change Date

#### (C)  Interest Rate Limit

My lifetime maximum interest rate limit is 12.250% , called "Lifetime Rate Cap "

SDZ53A (2006-09-3)          ADJUSTABLE PICK-A-PAYMENT NOTE          CA
                                      Page 1

LENDER'S USE ONLY

**(D) Index**

Beginning with the first Interest Change Date, my interest rate will be based on an index. The Index is the "Cost of Savings Index" as published by Wachovia Corporation. The Cost of Savings Index is the weighted average of the interest rates in effect as of the last business day of each calendar month on the U.S. dollar denominated personal time deposits (as defined by the Board of Governors of the Federal Reserve System for purposes of reporting deposits on FR 2900 by commercial banks) held by the U.S. branches and non-U.S. branches located on U.S. military facilities of the depository institution subsidiaries of Wachovia Corporation that hold federally insured deposits.

For this purpose, a business day is any calendar day other than Saturday, Sunday, or any legal holiday for national banks.

The Index will be published monthly by Wachovia Corporation, on or before the fifteenth day of each month, and made readily available. The most recent Index figure available on each Interest Change Date is called the "Current Index."

If an Index is substituted pursuant to section 2(F) of this Note, the alternate index will become the Index.

**(E) Calculation of Interest Rate Changes**

Lender will calculate my new interest rate by adding **2.150** percentage points, called the "Margin," to the Current Index. Subject to the limit stated in Section 2(C) above, the result of this calculation will be my new interest rate until the next Interest Change Date.

If Lender fails to utilize the entire interest rate increase to which it is entitled under this Note on any Interest Change Date by failing to add all or part of the allowable Margin to the Current Index, then Lender may add any such allowable Margin to the Current Index on any future Interest Change Date. Lender may not, at a later date, "carryover" or add interest to which it is not entitled under this Note on any Interest Change Date.

**(F) Alternate Index**

The Lender may choose an alternate index if the Index is no longer available. For purposes of this Section 2(F), the Cost of Savings Index or an alternate index is no longer available if:

(1)    The Lender, in its sole discretion, determines that (a) the Board of Governors of the Federal Reserve System has made a material change in the definition of personal time deposits or time deposits for purposes of reporting deposits on FR 2900 or a comparable successor report, or (b) the Index is otherwise calculated in a substantially different manner or based on substantially different information than at the time the Index became applicable to this Note, or

(2)    Applicable laws or regulations prevent the Lender from using the Index to calculate interest under this Note.

The selection of an alternate index shall be at Lender's sole discretion. The alternate index may be a national or regional index or another type of index accepted or approved by the Lender's primary regulator. The Lender will give me notice of the alternate index.

**3.    PAYMENTS**

**(A)    Time and Place of Payments**

I will pay Principal and interest by making payments every month.

I will make my monthly payments on the **15th** day of each month beginning on **September 15, 2007**. I will make these payments every month until I have paid (i) all the Principal and interest, and (ii) any other charges described below that I may owe under the Note, and (iii) any charges that may be due under the Security Instrument. If, on **August 15, 2037**, I still owe amounts under the Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **1901 HARRISON STREET, OAKLAND, CALIFORNIA 94612** or at a different place if required by notice from the Lender.

**(B)    Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ **1,774.33**. This amount will change as described in Sections 3(C) and 3(D) below. My initial monthly payment amount was selected by me from a range of initial payment amounts approved by Lender and may not be sufficient to pay the entire amount of interest accruing on the unpaid Principal balance.

**(C)    Payment Change Dates**

My monthly payment will change as required by Section 3(D) below beginning on the **15th** day of **September, 2008** and on that day every **12th** month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment will also change at any time Section 3(F) or 3(G) below requires me to pay a different amount.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date and as provided in Section 3(F) or 3(G) below.

**(D)    Calculation of Payment Changes**

Subject to Sections 3(F) and 3(G), on the Payment Change Date my monthly payment may be changed to an amount sufficient to pay the unpaid principal balance, including any deferred interest as described in Section 3(E) below, together with interest at the interest rate in effect on the day of calculation by the Maturity Date. However, the amount by which my payment can be increased will not be more than 7-1/2% of my then existing Principal and interest payment. This 7-1/2% limitation is called the "Payment Cap." The Lender will perform this Payment Change calculation at least 60 but not more than 90 days before the Payment Change Date.

**(E)  Deferred Interest; Additions to My Unpaid Principal**

From time to time, my monthly payments may be insufficient to pay the total amount of monthly interest that is due. If this occurs, the amount of interest that is not paid each month, called "Deferred Interest," will be added to my Principal and will accrue interest at the same rate as the Principal.

**(F)  Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal balance can never exceed **125%** of the Principal I originally borrowed, called "Principal Balance Cap." If, as a result of the addition of deferred interest to my unpaid principal balance, the Principal Balance Cap limitation would be exceeded on the date that my monthly payment is due, I will instead pay a new monthly payment. Notwithstanding Sections 3(C) and 3(D) above, I will pay a new monthly payment which is equal to an amount that will be sufficient to repay my then unpaid principal balance in full on the Maturity Date at the interest rate then in effect, in substantially equal payments.

**(G)  Payment Cap Limitation; Exceptions**

Beginning with the **10th** Payment Change Date and every 5th Payment Change Date thereafter, my monthly payment will be calculated as described in Section 3(D) above except that the Payment Cap limitation will not apply. Additionally, the Payment Cap limitation will not apply on the final Payment Change Date.

**(H)  Notice of Payment Changes**

The Lender will deliver or mail to me a notice of any changes in the amount of my monthly payment, called "Payment Change Notice," before each Payment Change Date. The Payment Change Notice will include information required by law.

**4.  FAILURE TO MAKE ADJUSTMENTS**

If for any reason Lender fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Lender may, upon discovery of such failure, then make the adjustments as if they had been made on time. I also agree not to hold Lender responsible for any damages to me which may result from Lender's failure to make the adjustment and to let the Lender, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid Principal.

**5.  BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal before it is due is called a "Prepayment". When I make a Prepayment, I will tell the Lender in writing that I am doing so. The Lender may require that any partial Prepayments be made on the date my regularly scheduled payments are due. If I make a partial Prepayment, there will be no changes in the due dates or amount of my regularly scheduled payments unless the Lender agrees to those changes in writing. I may pay deferred interest on this Note at any time without charge and such payment will not be considered a "Prepayment" of Principal. During the first 3 years of the loan term if I make one or more Prepayments that, in the aggregate, exceed $5,000 in any calendar month, I must pay a prepayment charge equal to 2% of the amount such Prepayments exceed $5,000 in that calendar month. After the first 3 years of the loan term, I may make a full or partial Prepayment without paying any prepayment charge.

**6.  MAXIMUM LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Lender may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.  BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)  Late Charges for Overdue Payments**

If the Lender has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Lender. The amount of the charge will be **5.00%** of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.

(Page 4 of 6)

**(B)  Default**

I will be in default if (i) I do not pay the full amount of each monthly payment on the date it is due, or (ii) I fail to perform any of my promises or agreements under this Note or the Security Instrument, or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts, or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading

**(C)  Notice of Default**

If I am in default, the Lender may send me a written notice, called "Notice of Default," telling me that if I do not pay the overdue amount by a certain date, the Lender may require me to pay immediately the amount of Principal which has not been paid and all the interest that I owe on that amount, plus any other amounts due under the Security Instrument

**(D)  No Waiver by Lender**

Even if, at a time when I am in default, the Lender does not require me to pay immediately in full as described above, the Lender will still have the right to do so if I am in default at a later time

**(E)  Payment of Lender's Costs and Expenses**

The Lender will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses may include, for example, reasonable attorneys' fees and court costs

**8.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at any Borrower at **1129 S 2ND ST, ALHAMBRA, CA  91801-4722,** or at a single alternative address if I give the Lender notice of my alternative address  I may give notice to Lender of a change in my address in writing or by calling Lender's customer service telephone number provided on my billing statement   I may designate only one mailing address at a time for notification purposes

Except as permitted above for changes of address, any notice that must be given to the Lender under this Note will be given by mailing it by first class mail to the Lender at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address

**9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed  Any person who takes over these obligations is also obligated to keep all of the promises made in this Note  The Lender may enforce its rights under this Note against each person individually or against all of us together  This means that any one of us may be required to pay all of the amounts owed under this Note

**10.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment, notice of dishonor, notice of acceleration, and protest  "Presentment" means the right to require the Lender to demand payment of amounts due  "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid

**11.  SECURED NOTE - ACCELERATION**

In addition to the protections given to the Lender under this Note, the Security Instrument dated the same date as this Note gives the Lender security against which it may proceed if I do not keep the promises which I made in this Note  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note and includes the following Paragraph 26:

**AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

<u>Acceleration of Payment of Sums Secured</u>  Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission  Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission  However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration  If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me

**Exception to Acceleration of Payment of Sums Secured.** If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if

    (i)   Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender,

    (ii)  Lender approves the creditworthiness of the transferee in writing,

    (iii)  transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards,

    (iv)  an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the balance of Principal and interest due under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender, and

    (v)  the transferee executes an assumption agreement which is satisfactory to Lender

The loan may be assumed under its then existing terms and conditions with one exception, the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes

**12.  GOVERNING LAW; SEVERABILITY**

This Note shall be governed by and construed under federal law and federal rules and regulations including those for federally chartered savings institutions, called "Federal Law." In the event that any of the terms or provisions of this Note are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Note

**13.  CLERICAL ERRORS**

In the event the Lender at any time discovers that this Note or the Security Instrument or any other document related to the loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from the Lender, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold the Lender responsible for any damage to me which may result from any such error

**14.  LOST, STOLEN OR MUTILATED DOCUMENTS**

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Lender delivers to me an indemnification in my favor, signed by the Lender, then I will sign and deliver to the Lender a Loan Document identical in form and content which will have the effect of the original for all purposes

THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS

(Page 6 of 6)

SIGNATURE PAGE

NOTICE TO BORROWER(S):

BY SIGNING THIS NOTE YOU AGREE TO PAY A PREPAYMENT CHARGE IN CERTAIN
CIRCUMSTANCES. PLEASE CAREFULLY READ THIS ENTIRE NOTE (INCLUDING THE
PREPAYMENT PROVISION) BEFORE YOU SIGN IT.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

BORROWER(S):

_____ (Seal)
BENJAMIN MENJIVAR

_____ (Seal)
SARA MENJIVAR

When recorded return to
First American Title Insurance
Lenders Advantage
1100 Superior Avenue, Suite 200
Cleveland, Ohio 44114
ATTN  NSS TEAM

**WORLD SAVINGS BANK**
**FINAL DOCUMENTATION**
**CLOSING DEPARTMENT**
**P.O. BOX 659548**
**SAN ANTONIO, TX 78265-9548**

**LOAN NUMBER:**

**NOTE AMOUNT: $551,650.00**

GPN:

FOR RECORDER'S USE ONLY

## DEED OF TRUST

THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, FREQUENCY AND AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED. THE SECURED NOTE PROVIDES FOR MONTHLY PAYMENTS OF PRINCIPAL AND INTEREST.

THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF TRUST IS $689,562.50 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.

I.    DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST
    **(A)  Security Instrument.** This Deed of Trust, which is dated **July 9, 2007,** will be called the "Security Instrument."

    **(B)  Borrower.** BENJAMIN MENJIVAR AND SARA MENJIVAR, HUSBAND AND WIFE sometimes will be called "Borrower" and sometimes simply "I" or "me."

    **(C)  Lender.** WORLD SAVINGS BANK, FSB,  ITS SUCCESSORS AND/OR ASSIGNEES, will be called "Lender." Lender is **a FEDERAL SAVINGS BANK,** which is organized and exists under the laws of the United States  Lender's address is **1901 Harrison Street, Oakland, CA 94612**

SD001A (2004-03-3)
DEFERRED INTEREST                         Page 1                    CA

LENDER'S USE ONLY

07 1826449

**(D) Note.** The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S **$551,650.00**, plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay this debt in regularly scheduled periodic payments as provided in the Note and to pay the debt in full by **August 15, 2037** ("Maturity Date").

**(E) Property.** The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

**(F) Sums Secured.** The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

**(G) Person.** Any person, organization, governmental authority or other party will be called "Person."

**(H) Trustor, Beneficiary, Trustee.** Borrower is the "Trustor," Lender is the "Beneficiary" and **Golden West Savings Association Service Co., A California Corporation** is the "Trustee."

## II.   BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY

I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to

(i)      pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender;

(ii)      pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii)      keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

## III.   DESCRIPTION OF THE PROPERTY

I give Trustee rights in the Property described below:

(i)      The Property which is located at **1129 S 2ND ST, ALHAMBRA, CA  91801-4722**. The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

(ii)      All buildings and other improvements that are located on the Described Property;

SD001B (2004-03-3)
DEFERRED INTEREST                                        Page 2                                        CA

(iii)   All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

(iv)   All rents or royalties and other income from the Described Property;

(v)   All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

(vi)   All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

(vii)   All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;

(viii)   All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

(ix)   All replacements of or additions to the property described in subsections (ii) through (viii) of this Section; and

(x)   All of the amounts that I pay to Lender under Paragraph 2 below

## IV.   BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (i) I lawfully own the Property, (ii) I have the right to grant and convey the Property to Trustee, and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have  I promise that I will defend my ownership of the Property against any claims of such rights.

### COVENANTS

I promise and I agree with Lender as follows·

## 1.   BORROWER'S PROMISE TO PAY

I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes

## 2.   PAYMENTS FOR TAXES AND INSURANCE

### (A)   Borrower's Obligations

I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any)

SD001C (2004-03-3)                                                                        CA

**(B)    Escrow Accounts**

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property, (b) yearly leasehold payments or ground rents on the Property, if any, (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any, and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C § 2601 et seq ("RESPA"), unless another law that applies to the Funds sets a lesser amount If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender If, under Paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

SD001D (2004-03-3)

CA

### 3.    APPLICATION OF BORROWER'S PAYMENTS

Unless applicable law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay prepayment charges due under the Secured Notes;

Second, to pay any advances due to Lender under this Security Instrument;

Third, to pay the amounts due to Lender under Paragraph 2 above;

Fourth, to pay interest due under the Secured Notes,

Fifth, to pay deferred interest due under the Secured Notes;

Sixth, to pay principal due under the Secured Notes,

Last, to pay late charges due under the Secured Notes.

### 4.    BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS

I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them.

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a **lien.** I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up, or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

### 5.    BORROWER'S OBLIGATION TO MAINTAIN INSURANCE

At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property  The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender  I may choose the insurance company but my choice is subject to Lender's approval  Lender may not refuse to approve my choice unless the refusal is reasonable  All of these insurance policies and renewals of the policies must include what is known as a **Standard Mortgagee Clause** to protect Lender. The form of all policies and renewals must be acceptable to Lender  Lender will have the right to hold the policies and renewals  If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender or the insurance company stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. I will notify Lender immediately of any offer to settle a claim I receive from the insurance company  I will immediately deliver any Proceeds I receive from any insurer or other persons to Lender  Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any Proceeds are used to reduce the amount of the outstanding balance of the Sums Secured, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above  However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Paragraph 28 below, all of my rights in the insurance policies will belong to Lender  Also, all of my rights in any Proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender  However, Lender's rights in those Proceeds will not be greater than the total amount of the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law

6.   **BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS**

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws  I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim  If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

SD001F (2004-03-3)                                                                                                 CA

## 7.    LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY

If, (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (including but not limited to any manner of legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may include, without limitation, appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Paragraph 5, above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument.

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

## 8.    LENDER'S RIGHT TO INSPECT THE PROPERTY

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

## 9.    AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY

I assign to Lender all my rights: (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property; and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other governmental taking of the Property. All of those proceeds will be paid to Lender. If I receive any such proceeds, I will immediately deliver them to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the Sums Secured have been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, Sums Secured will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds and settle the claim. Lender may then use the proceeds to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of the outstanding principal of the Secured Notes, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

07 1826449

SD001G (2004-03-3)                                                                                              CA

## 10.    CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS

### (A)    Borrower's Obligations

Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so.

### (B)    Lender's Rights

Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 28 below to demand that I make immediate payment in full of the Sums Secured.

## 11.    OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS

Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured.

Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor"). (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent.

Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument

## 12.    MAXIMUM LOAN CHARGES

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the outstanding principal balance of the Secured Notes or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes

SD001H (2004-03-3)

CA

**13.   LEGISLATION AFFECTING LENDER'S RIGHTS**

If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument.

**14.   NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT**

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at **1129 S 2ND ST, ALHAMBRA, CA  91801-4722**  A notice will be given to me at an alternative address if I give Lender notice of my alternative address. I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement.  I may designate only one mailing address at a time for notification purposes  Except as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I (C) above entitled, "Definitions of Words Used In This Deed of Trust," unless Lender gives me notice of a different address  Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

**15.   GOVERNING LAW; SEVERABILITY**

**This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located.**  In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

**16.   BORROWER'S COPY**

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument.

**17.   LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY**

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants, (B) enter upon and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change rental agreements and leases  If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 28, I understand and agree that: (A) my right to occupy the Property ceases at the time the Property is sold; (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by



Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

**18.     INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS**

An assignment is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include but are not limited to an action for breach of contract, fraud, concealment of a material fact, or for intentional or negligent acts. I assign these rights, and any and all proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to the Sum Secured and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment. I will notify Lender immediately if I believe I have the right to bring any such legal action against any persons, and will notify Lender immediately if I assert any claim or demand against or commence any legal action against any such person. If I receive any proceeds from any persons besides Lender in connection with any such claim, demand or legal action, I will immediately deliver such proceeds to Lender

**19.     CLERICAL ERRORS**

In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to execute such documentation as Lender deems necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

**20.     LOST, STOLEN OR MUTILATED DOCUMENTS**

If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

**21.     WAIVER OF STATUTE OF LIMITATIONS**

I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes

**22.     CAPTIONS**

The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

**23.     MODIFICATION**

This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender

**24.     CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS**

If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that:

**(A)**     If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest

SD001J (2004-03-3)

CA

**(B)**     The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project; (ii) By-laws of the Owners Association, (iii) Code of regulations for the Project; (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association, (v) The Project's covenants, conditions and restrictions, (vi) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them  I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above.

**(C)**     If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a **master** or **blanket** policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such **master** or **blanket** policy, then. (i) Lender waives the provision in Paragraph 2(B) above for the payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such **master** or **blanket** policy to Lender annually

In the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was required by Lender, in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me  If I receive any such proceeds, I will immediately deliver them to Lender or otherwise apply them as set forth above

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

**(D)**     I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to  (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking, (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally, (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the **master** or **blanket** hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**25.     FUTURE ADVANCES**

At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument

## 26.   AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

<u>Acceleration of Payment of Sums Secured.</u> Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me

<u>Exception to Acceleration of Payment of Sums Secured.</u> If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if

(i)   Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

(ii)   Lender approves the creditworthiness of the transferee in writing,

(iii)   transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

(iv)   an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the then outstanding balance of Principal and Interest under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender, and

(v)   the transferee executes an assumption agreement which is satisfactory to Lender Such assumption agreement may provide, if required by Lender, that the transferee open a deposit account with Lender or with a bank or other depository institution approved by Lender, to facilitate direct payments if direct payments are required in the Note.

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed  The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes

## 27.   SUBSTITUTION OF TRUSTEE

I agree that Lender may at any time appoint a successor trustee and that Person shall become the Trustee under this Security Instrument as if originally named as Trustee.

**28.    RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY**

It will be called a "Breach of Duty" if (i) I do not pay the full amount of each regularly scheduled payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts, or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured.

If there is a Breach of Duty by me, Lender may exercise the power of sale, take action to have the Property sold under applicable law, and invoke such other remedies as may be permitted under any applicable law

Lender does not have to give me notice of a Breach of Duty  If Lender does not make a demand for full payment of the Sums Secured upon a Breach of Duty, Lender may make a demand for full payment of the Sums Secured upon any other Breach of Duty.

If there is a Breach of Duty, Lender may also take action to have a receiver appointed to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property

The sale of the Property may be postponed by or at the direction of Lender  If the Property is sold, I agree that it may be sold in one parcel  I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property.

Lender will apply the proceeds from the sale of the Property in the following order: (A) to all fees, expenses and costs incurred in connection with the sale, including but not limited to trustees' and attorneys' fees, if any; (B) to all Sums Secured by this Security Instrument, and (C) any excess to the Person or Persons legally entitled to it

**29.    RECONVEYANCE**

Upon payment of all Sums Secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all Secured Notes to Trustee. Trustee shall reconvey the Property without warranty to Borrower  Lender may charge Borrower a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law  If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable

**30.    STATEMENT OF OBLIGATION**

Lender may collect a fee of $60.00, or such greater maximum amount as may from time to time be allowed by law, for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes

SD001M (2004-03-3)

CA

**31.    ( X )    QUICK QUALIFYING LOAN PROGRAM**

I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly This loan is called a "Quick Qualifying Loan." I have stated and I confirm that: (A) I do not have any other Quick Qualifying Loans with Lender, (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument; and (C) If I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin subject to the Lifetime Rate Cap stated in the Secured Notes.

**32.    ( X )    OWNER OCCUPANCY**

Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that. (A) the Property is my personal and primary residence, (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded; and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin, subject to the Lifetime Rate Cap stated in the Secured Notes

**( X )    VALUE INDICATES THAT THE PARAGRAPH APPLIES.**

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**

**BY SIGNING BELOW,** I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records

### (PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

#### BORROWER(S):

_____   (Seal)
BENJAMIN MENJIVAR

_____   (Seal)
SARA MENJIVAR

ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT



State of California

County of _Los Angeles_

On _July 16, 2007_ before me, _Kimberly Ashley-Robinson, a Notary Public_
      Date                                          (Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared _Benjamin Menjivar and Sara Menjivar, husband_
_and wife_
                           Name(s) of Signer(s)

☐ personally known to me

☑ (or proved to me on the basis of satisfactory evidence)

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal

**KIMBERLY ASHLEY-ROBINSON**
Commission # 1707482
Notary Public - California
Los Angeles County
My Comm. Expires Dec 23, 2010

Place Notary Seal Above          _Kimberly Ashley-Robinson_
                                 Signature of Notary Public

───────────── **OPTIONAL** ─────────────
*Though the information below is not required by law, it may prove valuable to persons relying on the document
and could prevent fraudulent removal and reattachment of this form to another document*

**Description of Attached Document**

Title or Type of Document _Loan Docs_

Document Date _July 9, 2007_ _____ Number of Pages _____

Signer(s) Other Than Named Above _N/A_

**Capacity(ies) Claimed by Signer(s)**

Signer's Name _____          Signer's Name: _____
☐ Individual                                ☐ Individual
☐ Corporate Officer — Title(s) _____     ☐ Corporate Officer — Title(s) _____
☐ Partner — ☐ Limited ☐ General            ☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact                          ☐ Attorney in Fact
☐ Trustee             RIGHT THUMBPRINT      ☐ Trustee            RIGHT THUMBPRINT
☐ Guardian or Conservator   OF SIGNER       ☐ Guardian or Conservator  OF SIGNER
☐ Other _____  Top of thumb here     ☐ Other _____ Top of thumb here

Signer is Representing: _____            Signer is Representing _____

© 2005 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402    Item No. 5907    Reorder: Call Toll-Free 1-800-876-6827

19

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of **Los Angeles**

On **July 16, 2007** before me, **Kimberly Ashley-Robinson a Notary Public**
<br>Date — Name and Title of Officer (e g , "Jane Doe, Notary Public")

personally appeared **Benjamin Menjivar and Sara Menjivar,**
<br>**husband and wife**
<br>Name(s) of Signer(s)

☐ personally known to me

☑ (or proved to me on the basis of satisfactory evidence)

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument

WITNESS my hand and official seal.

Place Notary Seal Above

*Kimberly Ashley-Robinson*
<br>Signature of Notary Public

KIMBERLY ASHLEY-ROBINSON
Commission # 1707482
Notary Public - California
Los Angeles County
My Comm. Expires Dec 23, 2010

─────────────── **OPTIONAL** ───────────────

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document*

**Description of Attached Document**

Title or Type of Document **Deed of Trust**

Document Date **July 9, 2007**          Number of Pages **15**

Signer(s) Other Than Named Above          **N/A**

**Capacity(ies) Claimed by Signer(s)**

Signer's Name _____
- ☐ Individual
- ☐ Corporate Officer — Title(s) _____
- ☐ Partner — ☐ Limited ☐ General
- ☐ Attorney in Fact
- ☐ Trustee
- ☐ Guardian or Conservator
- ☐ Other _____

Signer Is Representing. _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer's Name _____
- ☐ Individual
- ☐ Corporate Officer — Title(s) _____
- ☐ Partner — ☐ Limited ☐ General
- ☐ Attorney in Fact
- ☐ Trustee
- ☐ Guardian or Conservator
- ☐ Other _____

Signer Is Representing _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

© 2006 National Notary Association • 9350 De Soto Ave , P.O. Box 2402 • Chatsworth, CA 91313-2402          Item No 5907          Reorder Call Toll-Free 1-800-876-6827

07 1825449

# EXHIBIT "A"

LOT 232, AS SHOWN ON THAT CERTAIN MAP ENTITLED TRACT NO 10522, WHICH MAP WAS
FILED IN THE OFFICE OF THE RECORDER OF THE COUNTY OF LOS ANGELES, STATE OF
CALIFORNIA IN BOOK 161 OF MAPS PAGE(S) 47 TO 49.

MENJIVAR

ÇA

FIRST AMERICAN LENDERS ADVANTAGE
DEED OF TRUST

07 1826449

**WORLD SAVINGS BANK, FSB**

# E X H I B I T "A"

## LEGAL DESCRIPTION

**LOAN NO.**

ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF **LOS ANGELES** STATE
OF **CALIFORNIA**, DESCRIBED AS FOLLOWS:

**TAPE <u>ONLY</u> THE LEGAL DESCRIPTION TO THIS PAGE.**

SD001 (2003-03-2)  [GF430A1]                    Page 16 of 16                                    **CA**



**This page is part of your document - DO NOT DISCARD**

 **20071826449**    Pages: 021

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

08/02/07 AT 08:00AM

Fee: 79.00
Tax: 0.00
Other: 0.00
Total: 79.00

**Title Company**

# TITLE(S) :

L E A D    S H E E T

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.        Number of AIN's Shown





E345797        **THIS FORM IS NOT TO BE DUPLICATED**

### DECLARATION OF EXPERT WITNESS IN SUPPORT OF
### MOTION FOR ORDER DETERMINING VALUE OF COLLATERAL

I, <u>Jose Miguel Castillo</u> declare:

1.  I am over 18 years of age, and I am qualified to testify as an expert witness in my capacity as a:
    - ☑ Licensed Residential Property Appraiser with license no. <u>AL033082</u>
    - ☐ Other: _____

2.  Attached as Exhibit A to this declaration, is my report, which discloses all the data that I have used in forming my opinion.
3.  My Opinion of the value of the Collateral is <u>$749,000.00</u> as of <u>06/23/2018</u>.

    Based on my review of the Property, the comparables in the appraisal and the surrounding neighborhood and based on my experience, I do not believe that the value of this Property has changed significantly, if at all, since the specific date of the appraisal.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____
Signature
Jose Miguel Castillo
Printed Name

This form is mandatory  It has been approved for use in the United States Bankruptcy Court for the Central District of California

June 2013                                   Page  7                        F 3012-1.MOTION.VALUATION

# EXHIBIT A

# APPRAISAL OF REAL PROPERTY



### LOCATED AT
1129 S 2nd St
Alhambra, CA 91801
TRACT NO 10522 LOT 232

### FOR
Law Office Giovanni Orantes
3435 Wilshire Blvd, Ste #2920, Los Angeles, CA 90010

### OPINION OF VALUE
749,000

### AS OF
06/23/2018

### BY
Jose  Miguel Castillo
MC Appraisals
1230 S Broadmoor Ave
West Covina, CA 91790-3946
(626) 825-9249
miguelcas@verizon.net

# Uniform Residential Appraisal Report

File # 18-M1476

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

**SUBJECT**

| | | |
|---|---|---|
| Property Address 1129 S 2nd St | City Alhambra | State CA  Zip Code 91801 |
| Borrower Benjamin Menjivar & Sara Menjivar | Owner of Public Record MENJIVAR,BENJAMIN & SARA | County Los Angeles |

Legal Description TRACT NO 10522 LOT 232
ALHAMBRA

| Assessor's Parcel # 5348-011-021 | Tax Year 2017 | R.E. Taxes $ 4,489 |
|---|---|---|
| Neighborhood Name ALHAMBRA | Map Reference 596/ B6 | Census Tract 4816.04 |

Occupant ☒ Owner ☐ Tenant ☐ Vacant   Special Assessments $    ☐ PUD  HOA $ 0  ☐ per year ☐ per month
Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)
Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) Market Value
Lender/Client Law Office Giovanni Orantes   Address 3435 Wilshire Blvd, Ste #2920, Los Angeles, CA 90010
Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☐ Yes ☒ No
Report data source(s) used, offering price(s), and date(s).   CRMLS

**CONTRACT**

I ☐ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $   Date of Contract   Is the property seller the owner of public record? ☐ Yes ☐ No  Data Source(s)
Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☐ No
If Yes, report the total dollar amount and describe the items to be paid.

**NEIGHBORHOOD**

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | One-Unit Housing Trends | One-Unit Housing | | Present Land Use % |
|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | Property Values ☒ Increasing ☒ Stable ☐ Declining | PRICE $(000) | AGE (yrs) | One-Unit 80 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | 600  Low | 40 | 2-4 Unit 05 % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | 870  High | 96 | Multi-Family 05 % |
| | | 750  Pred. | 80 | Commercial 10 % |
| | | | | Other 05 % |

Neighborhood Boundaries MISSION ROAD TO THE NORTH, NEW AVENUE TO THE  EAST, VALLEY BLVD. TO THE SOUTH AND ATLANTIC BLVD. TO THE WEST
Neighborhood Description   SUBJECT  IS LOCATED IN AN AREA OF MIXED TRACT OF SINGLE FAMILY RESIDENCES EXHIBITING AVERAGE/GOOD QUALITY OF CONSTRUCTION AND MAINTENANCE; VARYING IN DESIGN, AGE, SIZE AND CONDITION. SCHOOLS , LOCAL AND REGIONAL SHOPPING ARE LOCATED WITHIN REASONABLE DISTANCE TO SUBJECT. THERE WERE NO ADVERSE CONDITIONS NOTED.
Market Conditions (including support for the above conclusions)   DUE TO STEADY SALES AND ADEQUATE INVENTORY ON MLS, THE SUBJECTS' MARKET IS STABLE,  SUPPLY AND DEMAND APPEAR TO BE IN BALANCE, MARKETING TIMES FOR COMPARABLE PROPERTIES IN THE AREA ARE 0 - 3 MONTHS IF PROPERLY LISTED.  CONVENTIONAL/GOVERNMENT FINANCING IS TYPICAL FOR THIS AREA.

**SITE**

| Dimensions See Plat Map for area calculations | Area 7593 sf | Shape Rectangular | View N;Res; |
|---|---|---|---|

Specific Zoning Classification ALR1YY   Zoning Description R-1 Residential
Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)
Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No  If No, describe  The highest
and best use of this property as improved, or as vacant, is the existing use. The current use gives the greatest net return to the land.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street ASPHALT | ☒ | |
| Gas | ☒ | | Sanitary Sewer | ☒ | | Alley REAR | ☒ | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No  FEMA Flood Zone X  FEMA Map # 060095 / 06037C1675F  FEMA Map Date 09/26/2008
Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No  If No, describe
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No  If Yes, describe
NO, THERE IS NO ADVERSE CONDITION FOR  THE SUBJECT. NO OTHER ADVERSE EASEMENTS, ENCROACHMENTS OR SLIDE AREAS WERE NOTED AT THE TIME OF INSPECTION.  SUBJECT CONFORMS WITH SURROUNDING HOMES.

**IMPROVEMENTS**

| General Description | Foundation | Exterior Description  materials/condition | Interior  materials/condition |
|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | Concrete Slab ☒ Crawl Space | Foundation Walls  CONCRETE / AVG | Floors  TILE/AVG |
| # of Stories  1 | ☒ Full Basement ☐ Partial Basement | Exterior Walls  STUCCO / AVG | Walls  DRYWALL / AVG |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | Basement Area 0 sq.ft. | Roof Surface  COMP / AVG | Trim/Finish  WOOD/PAINT/AVG |
| ☒ Existing ☐ Proposed ☐ Under Const. | Basement Finish 0 % | Gutters & Downspouts  OVERHANG/AVG | Bath Floor  TILE / AVG |
| Design (Style)  Tudor | ☐ Outside Entry/Exit ☐ Sump Pump | Window Type  ALUM / AVG | Bath Wainscot  TILE / AVG |
| Year Built  1930 | Evidence of ☐ Infestation | Storm Sash/Insulated  NO / YES | Car Storage  None |
| Effective Age (Yrs)  40 | ☐ Dampness ☐ Settlement | Screens  YES / AVG | ☐ Driveway  # of Cars  2 |
| Attic ☐ None | Heating ☒ FWA ☐ HWBB ☐ Radiant | Amenities ☐ Woodstove(s) # 0 | Driveway Surface  Concrete |
| ☐ Drop Stair ☐ Stairs | ☐ Other  Fuel Gas | ☐ Fireplace(s) # 0 ☒ Fence Wood | ☒ Garage  # of Cars  2 |
| ☐ Floor ☒ Scuttle | Cooling ☐ Central Air Conditioning | ☒ Patio/Deck Conc ☒ Porch Front | ☐ Carport  # of Cars  0 |
| ☐ Finished ☐ Heated | ☐ Individual ☒ Other  None | ☐ Pool None | ☐ Att. ☒ Det. ☐ Built-in |

Appliances ☐ Refrigerator ☒ Range/Oven ☐ Dishwasher ☐ Disposal ☐ Microwave ☐ Washer/Dryer ☐ Other (describe)
Finished area above grade contains:    6 Rooms    3 Bedrooms   2.0 Bath(s)   1,763  Square Feet of Gross Living Area Above Grade
Additional features (special energy efficient items, etc.).   SEE COMMENT ADDENDUM

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).   C4;No updates in the prior 15 years;Subject property is 88 years old and the interior is in average overall condition. It has Wood & Tile Flooring, Aluminum Windows, FWA Heating, no CAC. Public Records is not updated showing GLA 1,723 SqFt with Bedrooms and 2 Baths. Appraiser Inspection shows GLA 1,763 with 3 Bedrooms and 2 Baths. Value given as per inspection. No Recent upgrades noted.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No  If Yes, describe
NONE APPARENT OR DISCLOSED TO THE APPRAISER. I HAVE NOT BEEN PROVIDED WITH ANY DOCUMENTATION REVEALING ANY PHYSICAL DEFICIENCIES AND HAVE REPORTED ONLY APPARENT ADVERSE CONDITIONS.  BORROWER MAY NOT RELY ON THIS REPORT FOR STRUCTURAL CONDITIONS THAT MAY EXIST AND IS ENCOURAGED TO OBTAIN A HOME INSPECTION BY A PROFESSIONAL HOME INSPECTOR TO DETERMINE IF PROBLEMS EXIST. SEE LIMITING CONDITION # 5
Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No  If No, describe
THE SUBJECT PROPERTY IS VERY COMPATIBLE AND CONFORMING IN THE SUBJECT NEIGHBORHOOD. MARKETABILITY AND ACCEPTABILITY IS GOOD.

| Freddie Mac Form 70 March 2005 | UAD Version 9/2011    Page 1 of 6 | Fannie Mae Form 1004 March 2005 |
|---|---|---|

## Uniform Residential Appraisal Report

File # 18-M1476

There are **3** comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 758,000 to $ 778,000 .

There are **10** comparable sales in the subject neighborhood within the past twelve months ranging in price from $ 600,000 to $ 870,000 .

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 1129 S 2nd St | 1014 S Chapel Ave | | 1118 S 5th St | | 1204 S Stoneman Ave | |
| | Alhambra, CA 91801 | Alhambra, CA 91801 | | Alhambra, CA 91801 | | Alhambra, CA 91801 | |
| Proximity to Subject | | 0.35 miles NE | | 0.18 miles W | | 0.19 miles SE | |
| Sale Price | $ | | $ 776,000 | | $ 750,000 | | $ 730,000 |
| Sale Price/Gross Liv. Area | $        sq.ft. | $ 463.01 sq.ft. | | $ 425.41 sq.ft. | | $ 491.58 sq.ft. | |
| Data Source(s) | | NDC DATA/CRMLS;DOM 0 | | NDC DATA/CRMLS;DOM 15 | | NDC DATA/CRMLS;DOM 36 | |
| Verification Source(s) | | ZILLOW ID # 20711800 DOC 1511685 | | CRMLS # PW17231249 DOC 1452823 | | CRMLS # AR17227953 DOC 1352502 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | ArmLth | | ArmLth | | ArmLth | |
| Concessions | | Conv;0 | | Conv;0 | | Conv;20000 | 0 |
| Date of Sale/Time | | s12/17;c12/17 | | s12/17;c12/17 | | s11/17;c11/17 | 0 |
| Location | N;Res; | A;Res,BsySt | +5,000 | N;Res; | | N;Res; | |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | 7593 sf | 10922 sf | -6,700 | 7860 sf | 0 | 6290 sf | +2,600 |
| View | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Design (Style) | DT1;Tudor | DT1;Bungalow | 0 | DT1;Spanish | | DT1;Spanish | 0 |
| Quality of Construction | Q4 | Q4 | | Q4 | | Q4 | |
| Actual Age | 88 | 94 | 0 | 80 | 0 | 95 | 0 |
| Condition | C4 | C3 | -20,000 | C4 | | C4 | |
| Above Grade | Total | Bdrms. | Baths | Total | Bdrms. | Baths | Total | Bdrms. | Baths | Total | Bdrms. | Baths | |

| Above Grade | Total / Bdrms. / Baths | Total / Bdrms. / Baths | | Total / Bdrms. / Baths | | Total / Bdrms. / Baths | |
|---|---|---|---|---|---|---|---|
| Room Count | 6 / 3 / 2.0 | 7 / 4 / 2.0 | -5,000 | 6 / 3 / 2.0 | | 5 / 2 / 2.0 | +5,000 |
| Gross Living Area | 1,763 sq.ft. | 1,676 sq.ft. | 0 | 1,763 sq.ft. | | 1,485 sq.ft. | +13,900 |
| Basement & Finished | 0sf | 0sf | | 0sf | | 0sf | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Heating/Cooling | FWA/None | FWA/None | | FWA/Central | -2,000 | FWA/Central | -2,000 |
| Energy Efficient Items | NONE | NONE | | NONE | | NONE | |
| Garage/Carport | 2gd2dw | 2gd2dw | | 2gd2dw | | 2gd2dw | |
| Porch/Patio/Deck | PATIO | PATIO | | PATIO | | PATIO | |
| APN # | 5348-011-021 | 5349-015-027 | 0 | 5348-013-011 | 0 | 5348-021-002 | 0 |
| Net Adjustment (Total) | | + X - $ | -26,700 | + X - $ | -2,000 | X + - $ | 19,500 |
| Adjusted Sale Price | | Net Adj. 3.4 % | | Net Adj. 0.3 % | | Net Adj. 2.7 % | |
| of Comparables | | Gross Adj. 4.7 % $ | 749,300 | Gross Adj. 0.3 % $ | 748,000 | Gross Adj. 3.2 % $ | 749,500 |

X did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain    THE SALES AND LISTING HISTORY OF THE SUBJECT PROPERTY AND COMPARABLES WERE REVIEWED.

My research ☐ did X did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s)    MLS / NDC DATA

My research ☐ did X did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s)    MLS / NDC DATA

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | PER NDC DATA | PER NDC DATA | PER NDC DATA | PER NDC DATA |
| Effective Date of Data Source(s) | 06/23/2018 | 06/23/2018 | 06/23/2018 | 06/23/2018 |

Analysis of prior sale or transfer history of the subject property and comparable sales    SUBJECT HAS NOT TRANSFERRED TITLE WITHIN THE PAST 3 YRS. NONE OF THE COMPS SHOW PRIOR TRANSFER WITHIN THE PAST 12 MONTHS. THIS APPRAISAL REPORT IS INTENDED FOR USE IN A MORTGAGE TRANSACTION ONLY. THIS REPORT IS NOT INTENDED FOR OTHER USE. HOWEVER, SUBJECT WAS LISTED ON 08/27/2017 FOR THE AMOUNT OF $309,000. EXPIRED MLS # DW17184104 DOM 8 DAYS.

Summary of Sales Comparison Approach    SEE COMMENTS ADDENDUM

Indicated Value by Sales Comparison Approach $    749,000

Indicated Value by: Sales Comparison Approach $    749,000    Cost Approach (if developed) $ 750,409    Income Approach (if developed) $

The Sales Comparison Approach was given the most weight in determining the final value estimate, as it best represents the actions of typical buyers and sellers in the market. The Cost Approach was given less emphasis due to the subject's age and location in a fully developed locale. The Income Approach was not considered applicable because SFR properties are typically purchased by owner/users and not for income generation.

This appraisal is made X "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:    NO CONDITIONS.  APPRAISAL IS MADE IN CONFORMANCE WITH USPAP. ALL SALES ARE C.O.E. AS INDICATED. THIS COMPLETED CONVENTIONAL APPRAISAL REPORT AND IS DONE "AS IS".

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the **subject** of this report is

$ 749,000 , as of    06/23/2018 , which is the date of inspection and the effective date of this appraisal.

## Uniform Residential Appraisal Report

File # 18-M1476

THIS REPORT HAS BEEN ELECTRONICALLY PREPARED IN COMPLIANCE WITH USPAP GUIDELINES WHICH INCLUDES A SECURE DIGITAL SIGNATURE & ADEQUATE SECURITY MEASURES ARE IN PLACE TO PROTECT THE DATE PRODUCED BY THE APPRAISER. THIS COMMENT SHOULD BE NOTED THROUGHOUT THE APPRAISAL REPORT AND DOES NOT AFFECT THE FINAL MARKET VALUE

1) COST APPROACH: THE COST APPROACH IS BASED UPON THE PRESENT REPLACEMENT COST TO REPLACE THE BUILDING WITH ANOTHER BUILDING HAVING THE SAME UTILITY. THE COST APPROACH IS ALSO CONSIDERED A SUPPORTIVE APPROACH TO THE MARKET APPROACH.

2) MARKET APPROACH: THE MARKET APPROACH IS THE MAIN SUPPORTER OF VALUE. IT PRIMARILY BASED ON SALES OF SIMILAR TYPE PROPERTIES IN THE SUBJECT S AREA, THIS IS KNOWN AS THE PRINCIPLE OF SUBSTITUTION. THE ADJUSTMENTS BEING MADE FOR THE DIFFERENCE IN THE COMPARABLES COMPARED TO THE SUBJECT PROPERTY, IS BASED UPON AN EXTENSIVE RESEARCH OF PAIRED SALES ANALYSIS. THIS DETERMINES WHAT THE MARKET WOULD RETURN IN VALUE, OF THAT PARTICULAR DIFFERENCE, OR POSSIBLE AMENITY, TO THE PROPERTY. THIS IS KNOWN AS THE PRINCIPLE OF CONTRIBUTION. THE GREATEST WEIGHT WAS GIVEN TO THE MOST SIMILAR SALE, OR SALES, AS NOTED IN THE REPORT.

3) FINAL RECONCILIATION: AFTER REVIEWING AND ANALYZING ALL THREE APPROACHES, THE MARKET COST, AND INCOME APPROACHES, THE MARKET APPROACH WAS DETERMINED TO BE THE STRONGEST SUPPORTER OF VALUE, THE COST APPROACH WAS CONSIDERED SUPPORTIVE, THE INCOME APPROACH WAS NOT APPLICABLE FOR THIS TYPE OF PROPERTY.

4) EXTRAORDINARY ASSUMPTION: IT IS ASSUMED THAT ALL STRUCTURES, GIVEN VALUE IN THIS REPORT ARE LEGALLY PERMITTED AS STATED IN THIS REPORT. THE LAND IS ASSUMED TO HAVE NO UNKNOWN GEOLOGICAL OR ENVIRONMENT ADVERSE ISSUES. THE PHYSICAL CHARACTERISTICS OF THE COMPARABLES WERE EITHER VERIFIED THROUGH COUNTY RECORDS, MULTIPLE LISTING SERVICE, AND OR HOMEOWNER VERIFICATION, ASSUMED TO BE AS STATED, THE CURRENT ZONING IS ASSUMED TO BE AS STATED IN THIS REPORT. THE LEGAL AGE OF THE HOME IS ASSUMED TO BE AS STATED. THE ESTIMATED COST TO CURE , IF ANY, IS ASSUMED TO BE AS STATED. THE TYPE OF FOUNDATION IS ASSUMED TO BE AS STATED. IF ANY OF THESE ITEMS ARE FOUND TO BE NOT TRUE AND CORRECT, I RESERVE THE RIGHT TO CHANGE MY APPRAISAL.

5) HYPOTHETICAL CONDITION: NONE

**ADDITIONAL COMMENTS** (vertical label)

---

### COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)     LAND VALUE IS TYPICAL FOR THIS AREA. LAND VALUE IS DERIVED BY USING THE ABSTRACTION METHOD. THERE WERE NO RECENT SALES OF VACANT LAND IN THIS AREA.

| | | | | | |
|---|---|---|---|---|---|
| ESTIMATED ☐ REPRODUCTION OR ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | | = $ | 621,000 |
| Source of cost data    MARSHALL AND SWIFT | DWELLING | 1,763 Sq.Ft. @ $ | 180.00 | = $ | 317,340 |
| Quality rating from cost service    AVG    Effective date of cost data    06/23/2018 | Bsmt. | 0 Sq.Ft. @ $ | 0.00 | = $ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | | | = $ | |
| NO, THERE IS NO EXTERNAL OBSOLESCENCE INDICATED FOR THE | Garage/Carport | 324 Sq.Ft. @ $ | 80.00 | = $ | 25,920 |
| SUBJECT. NO FUNCTIONAL OBSOLESCENCE WAS NOTED FOR | Total Estimate of Cost-New | | | = $ | 343,260 |
| SUBJECT. THE RATIO OF LAND TO IMPROVEMENTS IS NORMAL FOR | Less | Physical | Functional | External | |
| THIS AREA. LAND VALUE IS DETERMINED BY THE LAND EXTRACTION | Depreciation | 228,851 | | 5,000 | = $( 233,851) |
| METHOD. SUBJECT MEETS ALL MINIMUM STANDARDS FOR SINGLE | Depreciated Cost of Improvements | | | = $ | 109,409 |
| FAMILY DWELLINGS | "As-is" Value of Site Improvements | | | = $ | 20,000 |
| Estimated Remaining Economic Life (HUD and VA only)    55 Years | INDICATED VALUE BY COST APPROACH | | | = $ | 750,409 |

**COST APPROACH** (vertical label)

---

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

| | | |
|---|---|---|
| Estimated Monthly Market Rent $ | X Gross Rent Multiplier    = $ | Indicated Value by Income Approach |
| Summary of Income Approach (including support for market rent and GRM) | | |

**INCOME** (vertical label)

---

### PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)?    Yes    No    Unit type(s)    Detached    Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

| | | |
|---|---|---|
| Total number of phases | Total number of units | Total number of units sold |
| Total number of units rented | Total number of units for sale | Data source(s) |

Was the project created by the conversion of existing building(s) into a PUD?    Yes    No    If Yes, date of conversion.

Does the project contain any multi-dwelling units?    Yes    No    Data Source

Are the units, common elements, and recreation facilities complete?    Yes    No    If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?    Yes    No    If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

**PUD INFORMATION** (vertical label)

## Uniform Residential Appraisal Report

File # 18-M1476

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---|---|---|---|---|---|---|---|
| Address | 1129 S 2nd St | 1204 S Sierra Vista Ave | | 25 E San Marino Ave | | 1217 S Almansor St | |
| | Alhambra, CA 91801 | Alhambra, CA 91801 | | Alhambra, CA 91801 | | Alhambra, CA 91801 | |
| Proximity to Subject | | 0.40 miles E | | 0.18 miles NE | | 0.44 miles E | |
| Sale Price | $ | $ | 760,000 | $ | 750,000 | $ | 758,888 |
| Sale Price/Gross Liv. Area | $          sq.ft. | $ 472.64 sq.ft. | | $ 458.16 sq.ft. | | $ 556.37 sq.ft. | |
| Data Source(s) | | NDC DATA/CRMLS;DOM 5 | | NDC DATA/CRMLS;DOM 10 | | NDC DATA/CRMLS;DOM 14 | |
| Verification Source(s) | | CRMLS # WS17189464 DOC 1117317 | | CRMLS # WS17162589 DOC 927224 | | CRMLS # MB18144641 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | ArmLth | | ArmLth | | Listing | |
| Concessions | | Conv;1000 | 0 | Conv;2550 | 0 | | |
| Date of Sale/Time | N;Res; | s09/17;c09/17 | 0 | s08/17;c08/17 | 0 | Active | |
| Location | N;Res; | N;Res; | | N;Res; | | A;Res;BsySt | +5,000 |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | 7593 sf | 6777 sf | +1,600 | 7392 sf | | 6359 sf | -1,500 |
| View | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Design (Style) | DT1;Tudor | DT1;Ranch | 0 | DT1;Ranch | | DT1;Ranch | 0 |
| Quality of Construction | Q4 | Q4 | | Q4 | | Q4 | |
| Actual Age | 88 | 92 | 0 | 80 | 0 | 93 | 0 |
| Condition | C4 | C3 | -25,000 | C3 | -25,000 | C3 | -25,000 |
| Above Grade | Total | Bdrms. | Baths | Total | Bdrms. | Baths | Total | Bdrms. | Baths | Total | Bdrms. | Baths |
| Room Count | 6 | 3 | 2.0 | 6 | 3 | 2.0 | | 6 | 3 | 2.0 | | 6 | 3 | 2.0 | |
| Gross Living Area | 1,763 sq.ft. | 1,608 sq.ft. | +7,800 | 1,637 sq.ft. | +6,300 | 1,364 sq.ft. | +20,000 |
| Basement & Finished | 0sf | 0sf | | 0sf | | | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Heating/Cooling | FWA/None | FWA/Central | -2,000 | FWA/Central | -2,000 | FWA/Central | -2,000 |
| Energy Efficient Items | NONE | NONE | | NONE | | NONE | |
| Garage/Carport | 2gd2dw | 2gd2dw | | 2gd2dw | | 2gd2dw | |
| Porch/Patio/Deck | PATIO | PATIO | | PATIO | | PATIO | |
| APN # | 5348-011-021 | 5349-003-027 | 0 | 5348-005-029 | 0 | 5349-003-044 | 0 |
| Net Adjustment (Total) | | ☐ + ☒ - $ | -17,600 | ☐ + ☒ - $ | -20,700 | ☐ + ☒ - $ | -3,500 |
| Adjusted Sale Price | | Net Adj.        2.3 % | | Net Adj.        2.8 % | | Net Adj.        0.5 % | |
| of Comparables | | Gross Adj.    4.8 % $ | 742,400 | Gross Adj.    4.4 % $ | 729,300 | Gross Adj.    7.0 % $ | 755,388 |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 4 | COMPARABLE SALE # 5 | COMPARABLE SALE # 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | PER NDC DATA | PER NDC DATA | PER NDC DATA | PER NDC DATA |
| Effective Date of Data Source(s) | 06/23/2018 | 06/23/2018 | 06/23/2018 | 06/23/2018 |

Analysis of prior sale or transfer history of the subject property and comparable sales    SEE COMMENTS ON PAGE #2

Analysis/Comments    SEE COMMENTS ON PAGE #2

Form 1004UAD.(AC) - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

## Uniform Residential Appraisal Report

File # 18-M1476

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

SCOPE OF WORK:   The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

INTENDED USE:   The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

INTENDED USER:   The intended user of this appraisal report is the lender/client.

DEFINITION OF MARKET VALUE:   The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:   The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

## Uniform Residential Appraisal Report

File # 18-M1476

APPRAISER'S CERTIFICATION:    The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

## Uniform Residential Appraisal Report

File # 18-M1476

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:**    The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name  Jose Miguel Castillo | Name |
| Company Name  MC Appraisals | Company Name |
| Company Address  1230 S Broadmoor Ave | Company Address |
| West Covina, CA 91790-3946 | |
| Telephone Number  (626) 825-9249 | Telephone Number |
| Email Address  miguelcas@verizon.net | Email Address |
| Date of Signature and Report  06/24/2018 | Date of Signature |
| Effective Date of Appraisal  06/23/2018 | State Certification # |
| State Certification # | or State License # |
| or State License #  AL033082 | State |
| or Other (describe)                State # | Expiration Date of Certification or License |
| State  CA | |
| Expiration Date of Certification or License  02/10/2020 | SUBJECT PROPERTY |

ADDRESS OF PROPERTY APPRAISED

1129 S 2nd St
Alhambra, CA 91801

APPRAISED VALUE OF SUBJECT PROPERTY $      749,000

**LENDER/CLIENT**

Name  No AMC
Company Name  Law Office Giovanni Orantes
Company Address  3435 Wilshire Blvd, Ste #2920, Los Angeles, CA
90010
Email Address  go@gobklaw.com

SUBJECT PROPERTY

☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
   Date of Inspection
☐ Did inspect interior and exterior of subject property
   Date of Inspection

COMPARABLE SALES

☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
   Date of Inspection

Form 1004UAD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

## Market Conditions Addendum to the Appraisal Report

File No. 18-M1476

The purpose of this addendum is to provide the lender/client with a clear and accurate understanding of the market trends and conditions prevalent in the subject neighborhood. This is a required addendum for all appraisal reports with an effective date on or after April 1, 2009.

| Property Address | 1129 S 2nd St | City | Alhambra | State | CA | ZIP Code | 91801 |
|---|---|---|---|---|---|---|---|

Borrower  Benjamin Menjivar & Sara Menjivar

Instructions: The appraiser must use the information required on this form as the basis for his/her conclusions, and must provide support for those conclusions, regarding housing trends and overall market conditions as reported in the Neighborhood section of the appraisal report form. The appraiser must fill in all the information to the extent it is available and must provide analysis as indicated below. If any required data is unavailable or is considered unreliable, the appraiser must provide an explanation. It is recognized that not all data sources will be able to provide data for the shaded areas below; if it is available, however, the appraiser must include the data in the analysis. If data sources provide the required information as an average instead of the median, the appraiser should report the available figure and identify it as an average. Sales and listings must be properties that compete with the subject property, determined by applying the criteria that would be used by a prospective buyer of the subject property. The appraiser must explain any anomalies in the data, such as seasonal markets, new construction, foreclosures, etc.

**MARKET RESEARCH & ANALYSIS**

| Inventory Analysis | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | 5 | 1 | 4 | Increasing | ☒ Stable | Declining |
| Absorption Rate (Total Sales/Months) | 0.83 | 0.33 | 1.33 | Increasing | ☒ Stable | Declining |
| Total # of Comparable Active Listings | 5 | 1 | 3 | Declining | ☒ Stable | Increasing |
| Months of Housing Supply (Total Listings/Ab.Rate) | 6.0 | 3.0 | 2.3 | Declining | ☒ Stable | Increasing |

| Median Sale & List Price, DOM, Sale/List % | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Median Comparable Sale Price | 748,100.00 | 750,500.00 | 753,400.00 | Increasing | ☒ Stable | Declining |
| Median Comparable Sales Days on Market | 32 | 33 | 31 | Declining | ☒ Stable | Increasing |
| Median Comparable List Price | 759,500.00 | 761,200.00 | 763,700.00 | Increasing | ☒ Stable | Declining |
| Median Comparable Listings Days on Market | 25 | 28 | 27 | Declining | ☒ Stable | Increasing |
| Median Sale Price as % of List Price | 98.50% | 98.59% | 98.65% | Increasing | ☒ Stable | Declining |
| Seller-(developer, builder, etc.)paid financial assistance prevalent? | | Yes | ☒ No | Declining | ☒ Stable | Increasing |

Explain in detail the seller concessions trends for the past 12 months (e.g., seller contributions increased from 3% to 5%, increasing use of buydowns, closing costs, condo fees, options, etc.).    Although there has been a growing inventory (oversupply) of homes for sale, values are showing evidence of stabilization. The current trend is stable. Sellers negotiations to bring in potential buyers noted. The average end result, is the seller lowering the sales price, from the listing price an estimated 1.35%. The sale-to-list price ratio's has been stable. The above specified information is identified as an average

Are foreclosure sales (REO sales) a factor in the market?    Yes  ☒ No  If yes, explain (including the trends in listings and sales of foreclosed properties).
Due to the market being in stable state, combined with sufficient "effective" buying power, bank owned and auction sales prices do not represent current general and specific trends. The REO sales would represent distress conditions, therefore not being relevant in the current market.

Cite data sources for above information.    The data sources utilized for the above information are NDC Data, Multiple Listing Service and DQNews.com. The data researched was neighborhood boundary specific.

Summarize the above information as support for your conclusions in the Neighborhood section of the appraisal report form. If you used any additional information, such as an analysis of pending sales and/or expired and withdrawn listings, to formulate your conclusions, provide both an explanation and support for your conclusions.
There is evidence of stabilization, the market research analysis indicates that values have been in a stable state. Supporting factors indicate that days on the market for the previous listings and sales have been lessening (exposure time), giving strong support for the estimated 0-3 months marketing time. All conclusions were based on information obtained within the neighborhood boundaries, therefore giving a more accurate and stronger supported conclusion.

**CONDO/CO-OP PROJECTS**

If the subject is a unit in a condominium or cooperative project, complete the following:    Project Name:

| Subject Project Data | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | | | | Increasing | Stable | Declining |
| Absorption Rate (Total Sales/Months) | | | | Increasing | Stable | Declining |
| Total # of Active Comparable Listings | | | | Declining | Stable | Increasing |
| Months of Unit Supply (Total Listings/Ab.Rate) | | | | Declining | Stable | Increasing |

Are foreclosure sales (REO sales) a factor in the project?    Yes    No    If yes, indicate the number of REO listings and explain the trends in listings and sales of foreclosed properties.

Summarize the above trends and address the impact on the subject unit and project.

**APPRAISER**

| Signature | Signature |
|---|---|
| Appraiser Name  Jose Miguel Castillo | Supervisory Appraiser Name |
| Company Name  MC Appraisals | Company Name |
| Company Address  1230 S Broadmoor Ave, West Covina, CA 91790-3946 | Company Address |
| State License/Certification #  AL033082    State  CA | State License/Certification #    State |
| Email Address  miguelcas@verizon.net | Email Address |

Freddie Mac Form 71    March 2009              Page 1 of 1              Fannie Mae Form 1004MC    March 2009

Form 1004MC2 – "TOTAL" appraisal software by a la mode, inc. – 1-800-ALAMODE

## Supplemental Addendum

File No. 18-M1476

| Borrower | Benjamin Menjivar & Sara Menjivar | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 1129 S 2nd St | | | | | | |
| City | Alhambra | County | Los Angeles | State | CA | Zip Code | 91801 |
| Lender/Client | Law Office Giovanni Orantes | | | | | | |

COMMENTS ON SUBJECT CONDITION OF IMPROVEMENTS:

THERE WERE NO FUNCTIONAL OR PHYSICAL INADEQUACIES NOTED WHICH WOULD EFFECT THE MARKETABILITY
OF THIS PROPERTY IN ITS "AS IS" CONDITION. NO REPAIRS WERE NOTED UPON THE INSPECTION, NO FORMAL
ELECTRICAL, PLUMBING, STRUCTURAL, GEOLOGICAL OR PEST INSPECTIONS PERFORMED.

ALL UTILITIES WERE TURNED ON, ALL APPLIANCES,  PLUMBING, GAS AND ELECTRICAL SYSTEMS WERE
FUNCTIONAL AND IN GOOD WORKING CONDITION.

SUBJECT PROPERTY IS HABITABLE AND IT IS IN AVERAGE OVERALL CONDITION.

SUBJECT HAS SMOKE DETECTORS.

SUBJECT DOES NOT HAVE CARBON MONOXIDE DETECTOR.

SUBJECT WATER HEATER IS NOT STRAPPED.

SUBJECT HAS QUICK RELEASE LATCHES FOR THE BEDROOMS SECURITY BARS

PRIOR APPRAISAL: The Appraiser has not performed an Appraisal or any other services as an Appraiser or in any
other capacity, regarding the property that is the subject of this report within the three-year period immediately
preceding acceptance of this assignment.

Exposure time is a "retrospective" opinion, looking back (from the effective date) to the beginning of the
"hypothetical" process of selling the asset, so that the sale would have been consummated on the "effective date" of
appraisal. While marketing time is a "forward looking" estimate (from the effective date), to estimate the amount of
time it might take a seller (sometimes the Intended User of the appraisal) to market and sell the asset. Based on
Current market conditions, the subject's reasonable exposure time is estimated to be 4 to 6 weeks.

## Supplemental Addendum

File No. 18-M1476

| | |
|---|---|
| Borrower | Benjamin Menjivar & Sara Menjivar |
| Property Address | 1129 S 2nd St |
| City | Alhambra |
| County | Los Angeles |
| State | CA |
| Zip Code | 91801 |
| Lender/Client | Law Office Giovanni Orantes |

COMMENTS ON COMPARISON APPROACH:

THE SEARCH FOR COMPARABLES WAS EXPANDED BOTH IN DISTANCE (1.00 MILE RADIUS) AND TIME (12 MONTHS) TO HELP PRODUCE THE MOST ACCURATE MARKET VALUE FOR THE SUBJECT. THE COMPARABLES SELECTED ARE THE MOST RECENT CLOSED SALES AND BEST AVAILABLE INDICATORS OF THE SUBJECT'S MARKETABILITY AT THE TIME OF INSPECTION AND THEY HELP BRACKET AND SUPPORT THE SUBJECT FINAL MARKET VALUE

THEY WERE SELECTED BASED ON THE SIMILARITIES THAT THEY HAVE WITH THE SUBJECT PROPERTY WHETHER LOCATION, DESIGN, GLA, ROOM COUNT, LOT SIZE AND EFFECTIVE AGE. THE TYPICAL GLA OF SFR IN THE AREA IS ABOUT 1,300 TO 1,900 SQFT AND THE SUBJECT HAS AN ESTIMATED GLA OF 1,763 SQ FT.

THE PHYSICAL CHARACTERISTICS OF THE COMPARABLES ARE BASED ON THE EXTERIOR INSPECTIONS AND ON INFORMATION PROVIDED BY MLS, REAL ESTATE AGENTS AND PUBLIC RECORDS. INCONSISTENCIES IN THE PUBLISHED DATA HAVE BEEN RECONCILED AND REPORTED ACCORDINGLY.

COMP #1 IS A FAIRLY RECENT "STANDARD " SALE BUT RELEVANT DUE TO A STABLE MARKET. IT IS IN SUPERIOR CONDITION, HAS GOOD CURB APPEAL WITH FRESH COAT OF PAINT AND VINYL WINDOWS. IT HAS SIMILAR BATH COUNT AND GLA. IT IS LOCATED CLOSE TO THE SUBJECT. THIS COMP HELPS BRACKET AND SUPPORT THE SUBJECT FINAL MARKET VALUE. IT WAS ADJUSTED FOR LOCATION (EXTERNAL INFLUENCE LOCATED ON A BUSY STREE), LOT SIZE, BEDROOM COUNT AND SUPERIOR CONDITION. ZILLOW INDICATES A MARKETING TIME OF 0 DAYS. ORIGINAL LIST PRICE $776,000

COMP #2 IS A RECENT "STANDARD" SALE, IN SIMILAR CONDITON, NO UPGRADES NOTED. IT HAS SIMILAR LOT SIZE, BEDROOM, BATH COUNT AND GLA. IT IS LOCATED CLOSE TO THE SUBJECT. THIS COMP HELPS BRACKET AND SUPPORT THE SUBJECT FINAL MARKET VALUE. IT WAS ADJUSTED FOR CAC. MLS INDICATES A MARKETING TIME OF 15 DAYS. ORIGINAL LIST PRICE $750,000

COMP #3 IS A RECENT "STANDARD SALE" IN SIMILAR CONDITION, NO UPGRADES NOTED. IT HAS SIMILAR BACTH COUNT AND IT IS LOCATED CLOSE TO THE SUBJECT. THIS COMP HELPS BRACKET AND SUPPORT THE SUBJECT FINAL MARKET VALUE. IT WAS ADJUSTED FOR LOT SIZE, BEDROOM COUNT, GLA AND CAC. MLS INDICATES A MARKETING TIME OF 36 DAYS. ORIGINAL LIST PRICE $750,000

COMP #4 IS AN OLDER "TRANSACTION " BUT RELEVANT DUE TO A STABLE MARKET. IT IS IN SUPERIOR CONDITION, WITH REMODELED KICTHEN AND BATHS. IT HAS SIMILAR BEDROOM AND BATH COUNT. IT IS LOCATED CLOSE TO THE SUBJECT. THIS COMP HELPS BRACKET AND SUPPORT THE SUBJECT FINAL MARKET VALUE. IT WAS ADJUSTED FOR LOT SIZE, SUPERIOR CONDITION, GLA AND CAC. MLS INDICATES A MARKETING TIME OF 5 DAYS. ORIGINAL LIST PRICE $759,800

COMP #5 IS AN OLDER "TRANSACTION " BUT RELEVANT DUE TO A STABLE MARKET. IT IS IN SUPERIOR CONDITION, WITH REMODELED KICTHEN, BATHS FRESH COAT OF PAINT. IT HAS SIMILAR LOT SIZE, BEDROOM AND BATH COUNT. IT IS LOCATED CLOSE TO THE SUBJECT. THIS COMP HELPS BRACKET THE SUBJECT FINAL MARKET VALUE. IT WAS ADJUSTED FOR SUPERIOR CONDITION, GLA AND CAC. MLS INDICATES A MARKETING TIME OF 10 DAYS. ORIGINAL LIST PRICE $749,000

COMP #6 IS AN ACTIVE "STANDARD" LISTING IN SUPERIOR CONDITION, WITH REMODELED KICTHEN, BATHS FRESH COAT OF PAINT. IT HAS SIMILAR BEDROOM AND BATH COUNT. IT IS LOCATED CLOSE TO THE SUBJECT. IT WAS ADJUSTED FOR LOCATION (EXTERNAL INFLUENCE LOCATED ON A BUSY STREET), LOT SIZE, SUPERIOR CONDITION, GLA AND CAC. MLS INDICATES A MARKETING TIME OF 14 DAYS. ORIGINAL LIST PRICE $758,888

AFTER REVIEWING ALL THE DATA AND ALL VALUE INDICATORS, FINAL ESTIMATED VALUE SELECTED AT $749,000 AND MOST WEIGHT IS GIVEN TO COMP #1 FAIRLY "STANDARD " SALE BUT RELEVANT DUE TO A STABLE MARKET. IT IS IN SUPERIOR CONDITION, HAS SIMILAR BATH COUNT AND GLA. IT IS LOCATED CLOSE TO THE SUBJECT. THIS COMP HELPS BRACKET AND SUPPORT THE SUBJECT FINAL MARKET VALUE. COMP #2 RECENT "STANDARD" SALE, IN SIMILAR CONDITON, NO UPGRADES NOTED. IT HAS SIMILAR LOT SIZE, BEDROOM, BATH COUNT AND GLA. IT IS LOCATED CLOSE TO THE SUBJECT. THIS COMP HELPS BRACKET AND SUPPORT THE SUBJECT FINAL MARKET VALUE. COMP # 3 RECENT "STANDARD SALE" IN SIMILAR CONDITION, NO UPGRADES NOTED. IT HAS SIMILAR BACTH COUNT AND IT IS LOCATED CLOSE TO THE SUBJECT. THIS COMP HELPS BRACKET AND SUPPORT THE SUBJECT FINAL MARKET VALUE

THEY ARE CLOSE IN PROXIMITY AND ARE GOOD INDICATORS OF THE CURRENT MARKET ACTIVITY IN THIS AREA.

COMP #6 IS SUBMITTED TO SHOW THE MARKETABILITY OF CURRENT LISTINGS IN THE AREA AND TO LEND SUPPORT

ADJUSTMENTS WERE MADE AT $5,000 FOR LOCATION (EXTERNAL INFLUENCE), $5,000 FOR BATH COUNT, $50.00 FOR GLA AND $2.00 A SQ FT FOR SITE . ADJUSTMENTS MADE WERE WITHIN MARKET LEVELS AND REFLECT THE DEMAND IN THE AREA.

THE ADJUSTMENT AMOUNTS ARE DETERMINED BY USING THE PAIRED SALES ANALYSIS BECAUSE IT IS THE BEST METHODOLOGY THAT HELPS REFLECT HOW MUCH OF AN ADJUSTMENT CAN BE MADE FOR ANY DIFFERENCE ON LOCATION, LOT SIZE, GLA, BEDROOM, BATH COUNT AND ANY OTHER FACTORS AFFECTING THE MARKET VALUES IN THE SUBJECT'S NEIGHBORHOOD. ALL THE ADJUSTMENTS MADE ARE REASONABLE AND THEY HELP SUPPORT AND BRACKET THE SUBJECT MARKET VALUE.

THE LAND VALUE IN THE COST APPROACH WAS DERIVED BY THE APPRAISER WITH THE ABSTRACTION METHOD; THE ABSTRACTION METHOD IS LESS RELIABLE DUE TO LACK OF DIRECT VACANT LAND SALES.

THE INCOME APPROACH IS NOT CONSIDERED RELIABLE DUE TO THE LACK OF RENTAL DATA TO ADEQUATELY SUPPORT A RATE OF CAPITALIZATION IN THE MARKET.

APPRAISER DOES NOT HAVE NOR HAS HAD ANY INTEREST IN THE PARTIES OR THE PROPERTY IN THE PAST 3 YEARS.

**Building Sketch**

| Borrower | Benjamin Menjivar & Sara Menjivar | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1129 S 2nd St | | | | | |
| City | Alhambra | County | Los Angeles | State | CA | Zip Code 91801 |
| Lender/Client | Law Office Giovanni Orantes | | | | | |



**Plat Map**

| Borrower | Benjamin Menjivar & Sara Menjivar | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1129 S 2nd St | | | | | |
| City | Alhambra | County | Los Angeles | State | CA | Zip Code | 91801 |
| Lender/Client | Law Office Giovanni Orantes | | | | | |



**Location Map**

| Borrower | Benjamin Menjivar & Sara Menjivar | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 1129 S 2nd St | | | | | | |
| City | Alhambra | County | Los Angeles | State | CA | Zip Code | 91801 |
| Lender/Client | Law Office Giovanni Orantes | | | | | | |



## Subject Photo Page

| Borrower | Benjamin Menjivar & Sara Menjivar | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 1129 S 2nd St | | | | | | |
| City | Alhambra | | County | Los Angeles | State | CA | Zip Code | 91801 |
| Lender/Client | Law Office Giovanni Orantes | | | | | | |



**Subject Front**

1129 S 2nd St
Sales Price
Gross Living Area     1,763
Total Rooms          6
Total Bedrooms       3
Total Bathrooms      2.0
Location             N;Res;
View                 N;Res;
Site                 7593 sf
Quality              Q4
Age                  88

**Subject Rear**



**Subject Street**



## Photograph Addendum

| Borrower | Benjamin Menjivar & Sara Menjivar | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 1129 S 2nd St | | | | | | |
| City | Alhambra | County | Los Angeles | State | CA | Zip Code | 91801 |
| Lender/Client | Law Office Giovanni Orantes | | | | | | |



LIVING ROOM



KITCHEN



DINING

## MC APPRAISALS

| | |
|---|---|
| Borrower | Benjamin Menjivar & Sara Menjivar |
| Property Address | 1129 S 2nd St |
| City | Alhambra  County Los Angeles  State CA  Zip Code 91801 |
| Lender/Client | Law Office Giovanni Orantes |



SIDE VIEW



SIDE VIEW



BEDROOM



BEDROOM



BATH



BEDROOM

## MC APPRAISALS

| Borrower | Benjamin Menjivar & Sara Menjivar | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 1129 S 2nd St | | | | | | |
| City | Alhambra | | County | Los Angeles | State | CA | Zip Code | 91801 |
| Lender/Client | Law Office Giovanni Orantes | | | | | | |



BATH



BREAKFAST NOOK



LAUNDRY



CARPET & TILE FLOORING



SMOKE & CARBON MONOXIDE DETECTOR



DOUBLE STRAPPED WATER HEATER

## Photograph Addendum

| Borrower | Benjamin Menjivar & Sara Menjivar | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Property Address | 1129 S 2nd St | | | | | | | |
| City | Alhambra | | County | Los Angeles | | State | CA | Zip Code | 91801 |
| Lender/Client | Law Office Giovanni Orantes | | | | | | | |


**REAR ALLEY**


**SECURITY SYSTEM**


**GARAGE EXTERIOR**


**GARAGE INTERIOR**


**STREET - 2ND VIEW**

## Comparable Photo Page

| Borrower | Benjamin Menjivar & Sara Menjivar | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1129 S 2nd St | | | | | |
| City | Alhambra | County | Los Angeles | State | CA | Zip Code 91801 |
| Lender/Client | Law Office Giovanni Orantes | | | | | |



### Comparable 1

1014 S Chapel Ave
| | |
|---|---|
| Prox. to Subject | 0.35 miles NE |
| Sale Price | 776,000 |
| Gross Living Area | 1,676 |
| Total Rooms | 7 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2.0 |
| Location | A;Res;BsySt |
| View | N;Res; |
| Site | 10922 sf |
| Quality | Q4 |
| Age | 94 |



### Comparable 2

1118 S 5th St
| | |
|---|---|
| Prox. to Subject | 0.18 miles W |
| Sale Price | 750,000 |
| Gross Living Area | 1,763 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 7860 sf |
| Quality | Q4 |
| Age | 80 |



### Comparable 3

1204 S Stoneman Ave
| | |
|---|---|
| Prox. to Subject | 0.19 miles SE |
| Sale Price | 730,000 |
| Gross Living Area | 1,485 |
| Total Rooms | 5 |
| Total Bedrooms | 2 |
| Total Bathrooms | 2.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 6290 sf |
| Quality | Q4 |
| Age | 95 |

### Comparable Photo Page

| | |
|---|---|
| Borrower | Benjamin Menjivar & Sara Menjivar |
| Property Address | 1129 S 2nd St |
| City | Alhambra |
| Lender/Client | Law Office Giovanni Orantes |

County Los Angeles    State CA    Zip Code 91801



### Comparable 4

1204 S Sierra Vista Ave
| | |
|---|---|
| Prox. to Subject | 0.40 miles E |
| Sale Price | 760,000 |
| Gross Living Area | 1,608 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 6777 sf |
| Quality | Q4 |
| Age | 92 |



### Comparable 5

25 E San Marino Ave
| | |
|---|---|
| Prox. to Subject | 0.18 miles NE |
| Sale Price | 750,000 |
| Gross Living Area | 1,637 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 7392 sf |
| Quality | Q4 |
| Age | 80 |



### Comparable 6

1217 S Almansor St
| | |
|---|---|
| Prox. to Subject | 0.44 miles E |
| Sale Price | 758,888 |
| Gross Living Area | 1,364 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.0 |
| Location | A;Res;BsySt |
| View | N;Res; |
| Site | 8359 sf |
| Quality | Q4 |
| Age | 93 |

# Appraiser Independence Certification

I do hereby certify, I have followed the appraiser independence safeguards in compliance with Appraisal Independence and any applicable state laws I may be required to comply with.  This includes but is not limited to the following:

- I am currently licensed and/or certified by the state in which the property to be appraised is located My license is the appropriate license for the appraisal assignment(s) and is reflected on the appraisal report.
- I certify that there have been no sanctions against me for any reason that would impair my ability to perform appraisals pursuant to the required guidelines.

I assert that no employee, director, officer, or agent of _____Law Office Giovanni Orantes_____, or any other third party acting as joint venture partner, independent contractor, appraisal management company, or partner on behalf of _____Law Office Giovanni Orantes_____, influenced, or attempted to influence the development, reporting, result, or review of my appraisal through coercion, extortion, collusion, compensation, inducement, intimidation, bribery, or in any other manner.

I further assert that _____Law Office Giovanni Orantes_____ has never participated in any of the following prohibited behavior in our business relationship:

1) Withholding or threatening to withhold timely payment or partial payment for an appraisal report;

2) Withholding or threatening to withhold future business with me, or demoting or terminating or threatening to demote or terminate me;

3) Expressly or impliedly promising future business, promotions, or increased compensation for myself;

4) Conditioning the ordering of my appraisal report or the payment of my appraisal fee or salary or bonus on the opinion, conclusion, or valuation to be reached, or on a preliminary value estimate requested from me;

5) Requesting that I provide an estimated, predetermined, or desired valuation in an appraisal report prior to the completion of the appraisal report, or requesting that I provide estimated values or comparable sales at any time prior to my completion of an appraisal report;

6) Provided me an anticipated, estimated, encouraged, or desired value for a subject property or a proposed or target amount to be loaned to the borrower, except that a copy of the sales contract for purchase transactions may be provided;

7) Provided to me, or my appraisal company, or any entity or person related to me as appraiser, appraisal company, stock or other financial or non-financial benefits;

8) Any other act or practice that impairs or attempts to impair my independence, objectivity, or impartiality or violates law or regulation, including, but not limited to, the Truth in Lending Act (TILA) and Regulation Z, or the USPAP.


_JMCastillo_____
Signature

_06/24/2018_____
Date

Jose Miguel Castillo
Appraiser's Name

AL033082
State License or Certification #

State Title or Designation

02/10/2020                                    CA
Expiration Date of License or Certification        State

1129 S 2nd St, Alhambra, CA 91801
Address of Property Appraised

05/13



Business, Consumer Services & Housing Agency

# BUREAU OF REAL ESTATE APPRAISERS
# REAL ESTATE APPRAISER LICENSE

## Jose M. Castillo

has successfully met the requirements for a license as a residential real estate appraiser in the State of California and is, therefore, entitled to use the title:

"Residential Real Estate Appraiser"

This license has been issued in accordance with the provisions of the Real Estate Appraisers' Licensing and Certification Law.

BREA APPRAISER IDENTIFICATION NUMBER:    AL 033082

Effective Date:    February 11, 2018
Date Expires:    February 10, 2020

Jim Martin, Bureau Chief, BREA

3037907

THIS DOCUMENT CONTAINS A TRUE WATERMARK. HOLD UP TO LIGHT TO SEE "CHAIN LINK"

## LEXINGTON INSURANCE COMPANY
### WILMINGTON, DELAWARE
Administrative Offices—99 High Street, Floor 23, Boston, Massachusetts 02110-23110

| | |
|---|---|
| Certificate Number: | 013648601-00 |
| This Certificate forms a part of Master Policy Number: | 018389876-05 |
| Renewal of Master Policy Number : | 018389876-04 |

> **YOUR RISK PURCHASING GROUP MASTER POLICY IS A CLAIMS MADE POLICY.**
> **READ THE ATTACHED MASTER POLICY CAREFULLY**

### THE AMERICAN ACADEMY OF STATE CERTIFIED APPRAISERS

### CERTIFICATE DECLARATIONS

1. Name and Address of Certificate Holder:
   Jose M. Castillo d/b/a
   MC Appraisals
   1230 S. Broadmoor Avenue
   West Covina                CA        91790

2. Certificate Period:    Effective Date:    09/19/17    to Expiration Date:    09/19/18
   12:01 a.m. Local Time at the Address of the Insured.

2a. Retroactive Date:    09/19/05
   12:01 a.m. Local Time at the Address of the Insured.

3. Limit of Liability:    $    1,000,000    each claim
                          $    1,000,000    aggregate limit

4. Deductible:            $1,000 each claim

5. Professional Covered Services Insured by this policy are:  REAL ESTATE APPRAISAL SERVICES

6. Advance Certificate Holder Premium:    $        743

7. Minimum Earned Premium:    25% or    $        186

**Forms and Endorsements:**
PRG 3512 (12/15) Real Estate Appraisers Professional Liability Coverage Form, PRG 2078 (01/17) Addendum to the Declarations, PRG 3935 (2/16) Premises Liability Coverage Amendatory Endorsement, 89644 (6/13) Economic Sanctions Endorsement, 91222 (09/16) Policyholder Notice, 118477 (03/15) Policyholder Notice, PRG 3150 (10/05) Real Estate Appraisers Professional Liability Insurance Declarations

**Additional Endorsements applicable to this Certificate only:**
None

Agency Name and Address:        INTERCORP, INC.
                                1438-F West Main Street
                                Ephrata, PA 17522-1345

> IT IS HEREBY UNDERSTOOD AND AGREED THAT THE CERTIFICATE HOLDER AGREES TO ALL TERMS AND CONDITIONS AS SET FORTH IN THE ATTACHED MASTER POLICY.
>
> THIS POLICY IS ISSUED BY YOUR RISK PURCHASING GROUP INSURER WHICH MAY NOT BE SUBJECT TO ALL OF THE INSURANCE LAWS AND REGULATIONS OF YOUR STATE.  STATE INSURANCE INSOLVENCY GUARANTY FUNDS ARE NOT AVAILABLE FOR YOUR RISK PURCHASING GROUP INSURER.

*Allen D Barry IV*                                County: Los Angeles

_____
Authorized Representative OR
Countersignature (in states where applicable)                Date: August 8, 2017

PRG 3152 (10/05)

**Supplemental Addendum**

File No. 18-M1476

| | |
|---|---|
| Borrower | Benjamin Menjivar & Sara Menjivar |
| Property Address | 1129 S 2nd St |
| City | Alhambra | County | Los Angeles | State | CA | Zip Code | 91801 |
| Lender/Client | Law Office Giovanni Orantes |

### Declaration of Jose Miguel Castillo

I , Jose Miguel Castillo  hereby declare and state as follows:

1. I am over 18 years of age and a Licensed Residential Appraiser.

Except when based on information and belief, I make this declaration based on facts within my personal

knowledge and if called as a witness, could and would testify thereto.

2. I am a duly qualified appraiser. My California Office of Real Estate Appraisers license number is
AL033082.

3. I personnaly inspected the home owned by Benjamin Menjivar and Sara Menjivar, located at 1129 S 2nd
St, Alhambra, CA 91801. A true and correct copy of the appraisal is attached hereto as Exhibit "A".

4. I have no present of contemplated interest in the real estate that is the subject of this appraisal report

and the fee I received is in no manner contingent upon the value reported.

5. I have no personal interest or bias with respect to the subject matter of the appraisal report, nor do I

have personal interest or bias with respect to the parties involved in the Motion for Order Valuating Property and

Stripping Lien Under 11U.S.C. 506 & 1322(b)(2) and Bankruptcy Rule 3012, Among others, to which my

declaration is attached.

6. As set forth in the appraisal and incorporated by reference as if set forth in full herein, based on the

degree of inspection of the subject property, as indicated therein, defined Scope of Work, Statement of

Assumptions and Limiting Conditions, and Appraiser's Certifications, my Opinion of the Market Value, as defined

therein, of the real property that is the subject of the appraisal is $749,000 as of  June23rd, 2018.

EXECUTED this 23rd day of June 2018, at Los Angeles County, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Jose Miguel Castillo

| | | |
|---|---|---|
| Signature | | Signature |
| Name  Jose  Miguel Castillo | | Name |
| Date Signed    06/24/2018 | | Date Signed |
| State Certification # | State | State Certification # | State |
| Or State License #    AL033082 | State  CA | Or State License # | State |

Form TADD2 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**3435 Wilshire Blvd., Suite 2920**
**Los Angeles, CA 90010**

A true and correct copy of the foregoing document entitled (*specify*):   **NOTICE OF MOTION AND MOTION FOR ORDER DETERMINING VALUE OF COLLATERAL**   will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:


1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On 10/3/2018, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**Brandye N Foreman on behalf of Creditor Wells Fargo Bank, N.A.**
cdcaecf@bdfgroup.com

**Philip E Koebel on behalf of Interested Party Philip E Koebel**
ecfpek@gmail.com, G32565@notify.cincompass.com

**Alvin Mar on behalf of U.S. Trustee United States Trustee (LA)**
alvin.mar@usdoj.gov

**Giovanni Orantes on behalf of Debtor Benjamin Isaac Menjivar**
go@gobklaw.com, gorantes@orantes-law.com,cmh@gobklaw.com,gobklaw@gmail.com,go@ecf.inforuptcy.com

**Giovanni Orantes on behalf of Joint Debtor Sara Aura Menjivar**
go@gobklaw.com, gorantes@orantes-law.com, cmh@gobklaw.com,gobklaw@gmail.com,go@ecf.inforuptcy.com

**Cassandra J Richey on behalf of Creditor Wells Fargo Bank, N.A.**
cdcaecf@bdfgroup.com

**Valerie Smith on behalf of Interested Party Courtesy NEF**
claims@recoverycorp.com

**Luis A Solorzano on behalf of Debtor Benjamin Isaac Menjivar**
ls@gobklaw.com, go@ecf.inforuptcy.com;go@gobklaw.com

**Luis A Solorzano on behalf of Joint Debtor Sara Aura Menjivar**
ls@gobklaw.com, go@ecf.inforuptcy.com;go@gobklaw.com

**Edward A Treder on behalf of Interested Party Courtesy NEF**
cdcaecf@bdfgroup.com

**United States Trustee (LA)**
ustpregion16.la.ecf@usdoj.gov

**Darlene C Vigil on behalf of Creditor Wells Fargo Bank, N.A.**
cdcaecf@bdfgroup.com

☐ Service information continued on attached page

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2013*                                          Page  8                            **F 3012-1.MOTION.VALUATION**

**2.  SERVED BY UNITED STATES MAIL**: On <u>10/03/2018</u>, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

U.S. Bankruptcy Court
Chambers of Hon. Judge Julia W. Brand
255 East Temple Street, Ste. 1382
Los Angeles, CA 90012

☑ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| 10/3/18 | Andrea M. Castro | |
| _Date_ | _Printed Name_ | _Signature_ |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

_June 2013_                                Page 9                          **F 3012-1.MOTION.VALUATION**

*(Attached page to Proof of Service-please include any additional or alternative addresses and attach additional pages if needed)*
*(Certified Mail required for service on a national bank.)*

| Name of 1st Lienholder)<br><br>**Wells Fargo Bank, N.A.**<br>**Attn: President or Corp. Officer**<br>**101 N. Phillips Avenue**<br>**Sioux Falls, SD 57104** | Address from:<br>☐ Proof of Claim<br>☑ Secretary of State<br>☑ FDIC website<br>☐ Other: *specify* | Delivery Method<br>☑ US Mail<br>☐ Certified Mail - Tracking#_____<br>☐ Overnight Mail - Tracking#_____<br>Carrier Name:_____ |
|---|---|---|
| Name of 1st Lienholder)<br><br>**Wells Fargo Bank, N.A.**<br>**Attn: President or Corp. Officer**<br>**101 N. Phillips Avenue**<br>**Sioux Falls, SD 57104** | Address from:<br>☐ Proof of Claim<br>☑ Secretary of State<br>☑ FDIC website<br>☐ Other: *specify* | Delivery Method<br>☐ US Mail<br>☑ Certified Mail - Tracking# *7018 0360 0000 6516 7622*<br>☐ Overnight Mail - Tracking#_____<br>Carrier Name:_____ |
| Name of 1st Lienholder)<br>**Wells Fargo Bank, N.A.**<br>**Default Document Processing**<br>**N9286-01Y57104**<br>**1000 Blue Gentian Road**<br>**Eagan, MN 55121** | Address from:<br>☑ Proof of Claim<br>☐ Secretary of State<br>☐ FDIC website<br>☐ Other: *specify* | Delivery Method<br>☑ US Mail<br>☐ Certified Mail - Tracking#_____<br>☐ Overnight Mail - Tracking#_____<br>Carrier Name:_____ |
| Name of 1st Lienholder)<br>**Wells Fargo Bank, N.A.**<br>**Default Document Processing**<br>**N9286-01Y57104**<br>**1000 Blue Gentian Road**<br>**Eagan, MN 55121** | Address from:<br>☑ Proof of Claim<br>☐ Secretary of State<br>☐ FDIC website<br>☐ Other: *specify* | Delivery Method<br>☐ US Mail<br>☑ Certified Mail - Tracking# *7018 0360 0000 6516 7615*<br>☐ Overnight Mail - Tracking#_____<br>Carrier Name:_____ |

| Name of 2nd Lienholder)<br><br>Agent for Service of Process<br>(Name & Address) | Address from:<br>☐ Proof of Claim<br>☐ Secretary of State<br>☐ FDIC website<br>☐ Other: *specify* | Delivery Method<br>☐ US Mail<br>☐ Certified Mail - Tracking#_____<br>☐ Overnight Mail - Tracking#_____<br>Carrier Name:_____ |
|---|---|---|
| Name of 2nd Lienholder)<br><br>Agent for Service of Process<br>(Name & Address) | Address from:<br>☐ Proof of Claim<br>☐ Secretary of State<br>☐ FDIC website<br>☐ Other: *specify* | Delivery Method<br>☐ US Mail<br>☐ Certified Mail - Tracking#_____<br>☐ Overnight Mail - Tracking#_____<br>Carrier Name:_____ |
| Name of 2nd Lienholder)<br><br>Agent for Service of Process<br>(Name & Address) | Address from:<br>☐ Proof of Claim<br>☐ Secretary of State<br>☐ FDIC website<br>☐ Other: *specify* | Delivery Method<br>☐ US Mail<br>☐ Certified Mail - Tracking#_____<br>☐ Overnight Mail - Tracking#_____<br>Carrier Name:_____ |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2013*                                    Page 10                                    **F 3012-1.MOTION.VALUATION**